(No. 12411.—Reversed and remanded.)

REVILO OLIVER *vs.* FLORENCE ROSS *et al.*—(FLORA OLIVER, Appellant, *vs.* FLORENCE ROSS *et al.* Appellees.)

*Opinion filed October 27, 1919.*

1. APPEALS AND ERRORS—*when Supreme Court is not bound by finding of chancellor on conflicting evidence.* Where all the testimony in a proceeding in chancery is taken before the master and the chancellor does not hear any of the witnesses, the Supreme Court is not bound by the rule that the finding of the chancellor will not be disturbed unless it is manifestly against the weight of the evidence.

2. PLEADING—*when a supplemental bill forms a part of original case.* Where a supplemental bill is, in effect, but an amendment to the original bill, by which matter which has transpired since the filing of the original bill is brought into the case, the supplemental bill forms a part of the original case.

3. DEEDS—*beneficiary must prove parties dealt at arm's length where fiduciary relation exists.* Where a fiduciary relation exists between parties any transaction involving the transfer of property between them and in which one of the parties becomes a beneficiary will be looked upon with disfavor, and the burden is on the beneficiary to show that the dealing was at arm's length.

4. SAME—*charge that deed is a forgery must be proved beyond reasonable doubt.* In a proceeding in equity where a party seeks to set aside a deed because it is a forgery, the charge of forgery must be proved beyond a reasonable doubt.

5. ESTOPPEL—*estoppel may arise from omission to assert right.* Estoppel may arise from silence as well as words, where there is the duty to speak and the party on whom the duty rests keeps silent after knowing the circumstances and having opportunity to speak, and it is the duty of a person having a right and seeing another about to commit an act infringing upon it, to assert his right.

6. SAME—*party challenging title to real property must be diligent in discovering its invalidity.* The party who challenges the title of his adversary to real property must be diligent in discovering that which will render the title invalid and must be diligent in his application for relief.

7. SAME—*when a wife is estopped to assert title.* A wife who, without asserting any claim of her own, participates in a chancery suit in which her husband claims to own the land involved, will be estopped to present her claim of ownership after the master makes a finding adverse to her husband.

8. FRAUD—*when deeds and a will should be set aside.* Deeds and a will procured by the chief beneficiary from her mother should be set aside where the preponderance of the evidence shows they were obtained by fraudulent representations and undue influence by the daughter.

APPEAL from the Circuit Court of Livingston county; the Hon. T. M. HARRIS, Judge, presiding.

THOMAS E. LYON, and W. W. SHELLEY, (EDWARD D. SHURTLEFF, of counsel,) for appellant.

W. R. HUNTER, (FRANK ORTMAN, of counsel,) for appellee Florence Ross.

ADSIT & THOMPSON, for Mary E. Oliver and other appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Livingston county establishing the ownership of section 33, township 26, north, range 8, east of the third principal meridian, situated in the town of Chatsworth, and lot 1 in the northwest quarter of section 5, lot 1 in the northeast quarter of section 6, lot 5 in the northwest quarter of section 5, the east half of lot 5 in the northeast quarter of section 6, and lot 5 in the northeast quarter of section 5, all in township 25, north, range 8, east of the third principal meridian, and situated in the town of Germanville, all in the county of Livingston and State of Illinois.

Amaretta Oliver became the owner of section 33 about 1880 by virtue of a deed from Franklin Oliver, her divorced husband. Franklin Oliver was married to Amaretta Oliver in 1850. They had three children: Revilo, born in 1853, John, born in 1858, and Florence, born in 1873. They settled in Livingston county at an early date and se-

289 – 40

cured claims and acquired rights to nearly 4000 acres of land. In 1879 they were divorced. Franklin Oliver, it appears, was a poor business man, and when he died, in 1881, he was without property. From time to time Amaretta Oliver acquired title to the lands here in controversy and other lands. This litigation grows out of a series of deeds, wills, trust agreements and lien notes secured from time to time from Amaretta Oliver by her son Revilo Oliver, and by her daughter, Florence Oliver Ross.

The pleadings and the evidence are very voluminous. On account of the involved condition of the pleadings we set them out more fully than is usually necessary in order to determine what is at issue. Because of the insufficiency of the abstract and the disposition of the parties to disagree on all the facts, we have been compelled to search through the record of approximately 3000 pages in an attempt to fairly determine the issues here presented.

Revilo Oliver lived with his mother from the date of his birth until her death, August 11, 1908, and was in active management of her affairs. John Oliver left home as a young man and maintained his home elsewhere until his mother's death. Florence Oliver married Thomas Ross in 1890 and has not lived at her mother's home since that time. The evidence in the record shows that the relations between Amaretta Oliver and Revilo Oliver were unusually close, even for mother and son. He managed all her affairs. It appears that the real estate which she owned at the time of the death of her husband was mortgaged for about one-fourth of its value. This mortgage was paid off by returns from the lands under the management and operation of Revilo. More land was accumulated under Revilo's management, the title being taken sometimes in the name of Amaretta and sometimes in the name of Revilo. The banking business, the leasing of the lands and all the other transactions were done first in the name of one and then in the name of the other. It is undisputed that the mother

often said that if it had not been for Revilo she would not be the owner of any property. Many witnesses testified to this fact, in addition to many other facts which showed the very high regard in which Revilo was held by his mother and the great affection she had for him. It is also apparent from the record that Revilo was able to make much money but unable to keep it. The record shows nothing unusual with respect to the relations between John and his mother. There appears to have been some trouble between Florence and her mother. Shortly after the birth of Gertrude, the first child of Florence, Gertrude came to live with her grandmother and her uncle Revilo. It appears that she was nurtured and raised in this home until she was twelve years of age, during which time a governess was provided for her and she was also sent to school. There appears to have been some trouble between Florence and her mother about this time, and Gertrude was taken from her grandmother's home and was not permitted to return after that. This statement is necessary to throw light on the future conduct of these parties and the circumstances under which the deeds and wills were executed.

The first instrument involved here is styled in the record a trust agreement. It reads:

"This is to certify that I hold in trust for Revilo Oliver a one-half interest in the following described property, to-wit: Lot one (1) in the northwest quarter (¼) section five (5) and lot one (1) in the northeast quarter (¼) section six (6), containing 160 acres, known as the Stuckey farm; also lot five (5) in the northwest quarter (¼) section five (5), and the east half (½) of lot five (5) in the northeast quarter (¼) section six (6), containing 185 acres, known as the Stinley farm, all in town twenty-five (25), north, range eight (8), east of the third principal meridian, situated in the county of Livingston and State of Illinois, said interest to be conveyed to the said Revilo Oliver as soon as the mortgages now on the said property are paid and satisfied in full, or as soon thereafter as the said Revilo Oliver may desire.

"Given under my hand and seal this 29th day of August, A. D. 1899.                    AMARETTA OLIVER."

This instrument was recorded April 6, 1911. In 1881 Revilo Oliver secured title to said section 33 through sheriff's deeds. Later, the mother quit-claimed to Revilo all her interest in section 33, so that he had full and complete title to the section. This title remained in him until 1887, when the land was conveyed to his mother through her brother, Niles Smith. The title remained in Amaretta Oliver until 1907, with the exception of two days in 1897, during which time Revilo held title to the land. This was about the time Revilo married Maud Barlow, a woman of questionable character. Legal title was conveyed to Revilo by his mother, at the suggestion of the Barlow woman, without Revilo's knowledge. Two days later it was re-conveyed by Revilo to his mother for an expressed consideration of $48,000. Seven years later the following instrument was prepared:

"$64,000.          CHATSWORTH, ILLINOIS, *October 22nd, 1904.*

"On or before five years after date I promise to pay to the order of Revilo Oliver sixty-four thousand dollars, with interest at five per cent per annum. This note is given for the entire purchase money and interest from date of sale for section thirty-three, town twenty-six, north, range eight, east of the third principal meridian, situated in Livingston county, Illinois, value received, said land to remain in the possession of said Revilo Oliver until note is paid.

"Due Oct. 22nd, 1909.          AMARETTA OLIVER."

On the back of the above note appears the following:

"I hereby accept this note for the entire purchase money and interest from date of sale, for section thirty-three (33), town twenty-six (26), north, range eight (8), east of the third principal meridian, situated in the county of Livingston, in the State of Illinois. I also agree that this note shall not become a lien on any property my mother, Amaretta Oliver, now owns, except said section thirty-three as above described.          REVILO OLIVER."

This instrument was recorded in Livingston county March 28, 1911. September 8, 1904, Amaretta Oliver executed a will, by which she gave to Revilo Oliver all of section 33; to John Oliver lot 5 in the northeast quarter of section 5 and lot 5 in the northwest quarter of section 5, and the east half of lot 5 in the northeast quarter of sec-

tion 6, township 25, north, range 8, east of the third principal meridian, containing 120 acres more or less; and to Florence Ross lot 1 in the northeast quarter of section 6 and lot 1 in the northwest quarter of section 5, township 25, north, range 8, east of the third principal meridian, containing 160 acres more or less; all the above lands being situated in Livingston county, with the provision that all of the property was to remain in the custody and control of Revilo, with full power to collect all rents until he should have paid off all the mortgages and indebtedness. This will was signed in the presence of her sons, Revilo and John. July 6, 1908, a holographic codicil was added, which reads:

"To my administrators, Warren and Nathan Goodell: If I should die before the mortgage is paid, help Revilo get my property back and divide as stated in this my last will.

AMARETTA OLIVER."

There is also in the record the following instrument:

"STATE OF TEXAS, ⎰ *ss.*
  *Wichita County.* ⎱

"This indenture witnesseth, that the grantor, Amaretta Oliver, (a widow,) of the village of Iowa Park, in the county of Wichita and State of Texas, for the consideration of love and affection and one dollar and other good and valuable consideration, the receipt of which is hereby acknowledged, convey and quit-claim to Flora Oliver, of the town, county and State aforesaid, the following described real estate, to-wit:

"All of section thirty-three (33), in township twenty-six (26), north, range eight (8), east of the third principal meridian; also lot one (1) in the northwest quarter (¼) of section five (5), and lot one (1) in the northeast quarter (¼) of section six (6), and lot five (5) in the northwest quarter (¼) of section five (5), and the east half (½) of lot five (5) in the northeast quarter (¼) of section six (6), in township twenty-five (25), north, range eight (8), east of the third principal meridian, situated in the county of Livingston and State of Illinois.

"My son Revilo Oliver being the actual owner of the above described property and I having held the record title in trust for him, it is my desire and intention to convey all the right, title and interest I have in said property to Revilo's wife, Flora Oliver.

"Signed, sealed and delivered this 25th day of October, A. D. 1907.    AMARETTA OLIVER. (Seal)"

"STATE OF TEXAS, ⎰ *ss.*
     *Wichita County.* ⎱

"Before me, the undersigned, a notary public in and for Wichita county, Texas, on this day personally appeared Amaretta Oliver, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act, for the purposes and considerations therein expressed.

"Given under my hand and official seal this 25th day of October, A. D. 1907.                       C. C. DAVIS,
(Seal)                 *Notary Public, Wichita County, Texas.*
     "My commission expires May 31, 1909."

The instrument was recorded in the recorder's office of Livingston county, Illinois, July 31, 1914.

Early in January, 1908, Florence Ross went from her home in Momence, Illinois, to Iowa Park, Texas. This was the first time Florence had seen her mother for many years. She represented to her mother that Revilo's wife was an evil, designing woman, seeking to get hold of her property, and that she was worse than Maud Barlow, the prostitute Revilo first married. On the 27th day of January, 1908, she secured a deed conveying section 33 to herself, and a second deed conveying 142 acres of the Germanville lands to her brother, John Oliver. On the same day there was executed a will by Amaretta Oliver which devised to Revilo a life interest in about 200 acres of the Germanville lands. The remainder in fee of this land was devised to John Oliver. All the rest and residue of her estate was by this will devised to Florence Ross. The above deeds were acknowledged before W. R. Ferguson, a notary public of Wichita county, Texas. May 5, 1908, Amaretta Oliver executed the following notice of ownership:

"STATE OF TEXAS, ⎰ *ss.*        *Notice of Ownership.*
     *Wichita County.* ⎱

"Take notice, all men, by these presents, that I, Amaretta Oliver, of Iowa Park, in the county of Wichita and State of Texas, do hereby certify and give notice to every person or to whomever it may concern, that I claim the legal title to and am the lawful owner of the following described property: All of section thirty-three (33), town twenty-six (26), north, range eight (8), east of

the third principal meridian, containing six hundred and forty acres (640) more or less, situated in the county of Livingston and State of Illinois; and that a certain deed dated on or about January 27th, 1908, and now on record in said Livingston county, Illinois, purporting to be a conveyance from me to one Florence Ross, of Newton county, Indiana, was procured by fraud and misrepresentation and without consideration of any kind whatsoever, and unless said Florence Ross re-conveys said property to me without litigation I will file a bill in chancery to have said fraudulent conveyance set aside and said property restored to me, as the law provides in such cases.

"Dated at Iowa Park, Texas, this 5th day of May, A. D. 1908.
                                        AMARETTA OLIVER."

This instrument was signed and acknowledged before W. R. Ferguson, notary public of Wichita county, Texas, May 5, 1908, and was recorded in Livingston county, Illinois, May 8, 1908. There was executed at the same time and recorded at the same time a general power of attorney authorizing Revilo Oliver to attend to all her legal and financial affairs. The instrument above set out, together with a few other deeds and wills, shows the condition in which Amaretta Oliver left the title to her property.

March 3, 1910, Revilo Oliver filed his bill in the circuit court of Livingston county, Illinois, setting out his claims and rights under the lien on section 33 by virtue of the $64,000 note, alleging, among other things, that he had for a number of years leased the land in his own name and had improved the same; that he had otherwise exercised all rights of ownership over the land for a long period of time, and that his title to the land had not been disputed until January 27, 1908, when Florence Ross, his sister, through fraudulent, false and corrupt means procured a conveyance of section 33 to herself from Amaretta Oliver, her mother, a woman then seventy-six years old and feeble and unsound in mind and body. He prayed for cancellation of this deed and for an injunction against Florence Ross from interfering with his tenants and his rights in the land. The bill was later amended, joining John Oli-

ver as a party defendant. Florence Ross answered that Revilo Oliver was not the owner of section 33, but that, on the contrary, Amaretta Oliver had been continuously the owner from 1887 to 1908; that the conveyance from Amaretta Oliver to Revilo Oliver on October 13, 1897, was a mere accommodation conveyance and that no consideration passed; that at that time Revilo was about to marry Maud Barlow, and that Maud Barlow, under the pretense that her brothers would give her valuable land they were holding in trust for her if she could show them she was marrying a man of wealth, prevailed upon Amaretta Oliver to deed section 33 to Revilo temporarily and to deliver the deed to her, so that she might show the same to her brothers and then return it to Amaretta without its being placed on record; that in violation of her agreement Maud Barlow placed this deed on record October 21; that on October 15, for a stated consideration of $48,000, Revilo re-deeded this section to Amaretta. Further answering, she denied the execution of the promissory note of $64,000 and alleged it to be a forgery; alleged that the leasing of the lands in the name of Revilo and his collection of the rent were done merely as an agent of Amaretta, and that such other acts as were done in his name were done as agent and not as owner; denied that Amaretta Oliver was on the 27th of January, 1908, incapacitated to make the deed and denied that said deed was obtained by fraud or undue influence, and averred that said deed was a valid transfer of the property. John Oliver answered that he was not informed of the transactions between Amaretta Oliver and Revilo Oliver, but averred that a receiver should be appointed for the land and that the deed from Amaretta Oliver to Florence Ross should be set aside.

June 30, 1910, John Oliver filed his cross-bill, alleging that Amaretta Oliver died August 11, 1908, the owner in fee of section 33, in township 26, north, range 8, east of the third principal meridian, in the county of Livingston

and State of Illinois, and left surviving her as her only
heirs-at-law her two sons, Revilo and John, and her daugh-
ter, Florence Ross; that Amaretta Oliver died testate, leav-
ing as her last will and testament a will executed Septem-
ber 8, 1904, with a codicil attached July 6, 1908; that this
will was admitted to probate in Wichita county, Texas, at
the December, 1909, term of the county court; that the
will was proven by the testimony of Revilo and John, both
devisees, and that their testimony not being corroborated,
they could take nothing under the terms of the will; that
he was therefore the owner in fee of the undivided one-
third part of section 33 as tenant in common with Revilo
Oliver and Florence Ross; that Florence Ross on the 27th
day of January, 1908, obtained from Amaretta Oliver by
false and fraudulent means a deed purporting to convey to
her this section 33; that at that time Amaretta Oliver was
seventy-six years of age, sick, feeble and unsound in mind
and body by reason of both disease and old age, and that
she was then incapable, both mentally and physically, of
handling, managing and transacting her business affairs or
of executing a conveyance of said lands. He prayed that
the deed might be set aside and that the property pass as
intestate property, and that the court should by decree vest
in him the undivided one-third of section 33 as tenant in
common with Revilo Oliver and Florence Ross. Answers
were filed to this cross-bill.

On June 26, 1911, Revilo Oliver filed an amended bill,
bringing into the cause the Germanville land, alleging own-
ership of the undivided one-half of it by virtue of the
trust agreement heretofore set out, and carrying back his
claim of ownership to section 33 to two certain sheriff's
deeds heretofore referred to, and asserting as to section 33
his open and continuous possession and undisturbed man-
agement and control, payment of taxes and discharge of
mortgages, improvements and betterments from 1881 to
1908. Answers were filed, denying these claims.

Additional amended bills and answers were filed, putting in issue the validity of every instrument executed by Amaretta Oliver, and the matter was finally referred to the master to take testimony. While it appears in the record in a number of places that there was a reference to the master the order of reference does not appear, and it will be presumed that the master was directed to take evidence on all the bills, amended bills, cross-bills and answers.

On July 17, 1914, the master filed his report, finding that on January 27, 1908, Amaretta Oliver was the owner of section 33; also lot 1 in the northwest quarter of section 5, lot 1 in the northeast quarter of section 6, lot 5 in the northwest quarter of section 5, and the east half of lot 5 in the northeast quarter of section 6; that by procurement of defendant Florence Ross, Amaretta Oliver executed on that date two deeds, one to Florence Ross for section 33 and the other to John Oliver conveying 142 acres of the other lands described; that Amaretta Oliver was then aged, feeble, not of sound mind or memory and under the domination of defendant Ross, who procured said deeds by false and fraudulent representations concerning Revilo Oliver and his wife, Flora, and by undue influence over Amaretta Oliver; that complainant, Revilo Oliver, lived with his mother from his birth until her death; that practically all of her business was transacted by him as her agent; that their profits and losses were large and so badly mixed that it could not be determined whose money was used for any purpose; that there were many conveyances to and fro between them without consideration and that no faith was given by either of them to any of said conveyances; that Revilo Oliver was not entitled to a vendor's lien by reason of Amaretta Oliver's execution of the $64,000 note; that the note was without consideration; that Amaretta Oliver held no part of the Germanville lands in trust for complainant; that by his conduct and acquiescence and contradicting claims he was estopped from claiming any

interest against his mother. The master recommended that by decree the deeds to Florence Ross and John Oliver of January 27, 1908, be set aside and declared null and void; that the prayer for a vendor's lien be denied and that Revilo's relief sought regarding the Germanville lands be denied. He recommended denial of other relief except in conformity with the above, and that the decree give title to all said lands in Amaretta Oliver at the time of her death, free of any interest or claim of complainant, legal or equitable. Objections were filed to this report both by the complainant, Revilo Oliver, and the defendants, Florence Ross and John Oliver. The objections were made exceptions by order of court and the matter was set down for hearing before the circuit court of Livingston county on April 12, 1915.

At this time there was brought forward the deed from Amaretta Oliver to Flora Oliver, by which she claimed to be the holder of the legal title to all of section 33 and about 345 acres of the Germanville land. It was claimed that this deed had not been brought forward before this time because it had been lost. Max Lang, brother of the present complainant, Flora Oliver, and who was living at North Milwaukee, Wisconsin, claimed that he found the deed in January, 1914, at his home, in a trunk, among some sheet music belonging to his sister, Flora, and that he immediately mailed it to her. Revilo Oliver quit-claimed all his interest in these lands to his wife, Flora Oliver. She had this deed from her husband and the quit-claim deed from Amaretta Oliver both recorded in the recorder's office of Livingston county on July 31, 1914. On April 19, 1915, the complainant, Flora Oliver, under order of court filed her amended supplemental bill, setting out all the matters and things claimed by her husband, Revilo Oliver, in his bill and amended bills, and setting out execution and delivery to her of the deed executed by Amaretta Oliver under date of October 25, 1907, and the deed given to her

by her husband under date of July 31, 1914, and averring that by the deed of her husband she had become his assignee and entitled to succeed to whatever benefits would have accrued to him had he not executed said deed, and explaining the loss of her deed and why it had not been brought forward earlier. Florence Ross and John Oliver filed separate answers, denying the existence of the deed given by Amaretta Oliver to the new complainant, Flora Oliver, and denying that it ever had any existence or that it was ever lost but alleging that it was a forgery. They further alleged that if Flora Oliver ever had any rights in the premises she was guilty of *laches* and should be estopped from asserting her title.

The master again considered the cause on the original bill, the amendments to the original bill, the supplemental bill and its amendments, the cross-bills and answers. February 17, 1917, the death of John Oliver was suggested, and his widow and children were made parties defendant and service was had upon such new defendants. On March 4, 1918, the master's report, with objections to the same, was filed, and the objections of Flora Oliver, Florence Ross and the heirs of John Oliver were overruled. The objections were made exceptions before the court and were there argued. The court sustained the exceptions of Florence Ross and held the deeds executed by Amaretta Oliver on January 27, 1908, good and delivered deeds and not made through any fraud or undue influence of any kind, and found that on said day Amaretta Oliver was of sound mind and memory and legally competent to make and execute said instruments. The decree further found that the $64,000 note was not a valid obligation and was void; that the trust agreement was likewise not a valid obligation and was void; that the making and placing upon the record in the recorder's office of Livingston county of the alleged notice of ownership were not the free and voluntary acts of Amaretta Oliver; that said notice of ownership was

void, and that the instrument alleged to have been executed and delivered by Amaretta Oliver to Flora Oliver on October 25, 1907, was a forged instrument and therefore void. The court further found that Revilo Oliver had no rights in the lands which he purported to convey to his wife on July 31, 1914, and further found that, aside from the fact that the deed under which Flora Oliver claimed title to these lands was null and void, Flora Oliver was estopped from claiming any interest in said lands by reason of her remaining silent and permitting the litigation over these lands to be carried on with her knowledge for a number of years without asserting her claim. The decree therefore ordered the $64,000 note, the trust agreement, the notice of ownership and the Flora Oliver deed canceled, and declared the title in fee simple confirmed in John Oliver and Florence Ross in accordance with the terms of the respective conveyances to them from Amaretta Oliver.

All of the testimony taken in this case was taken before the master in chancery. None of it was taken in open court. The master had some advantage in being able to see and hear practically all the witnesses, but the chancellor was in no better position to weigh the evidence than we are. Inasmuch, therefore, as the chancellor has not seen and heard the witnesses we are not bound by the rule that the finding of the chancellor will not be disturbed unless it is clearly and manifestly against the weight of the evidence. (*Larson* v. *Glos,* 235 Ill. 584.) As the supplemental bill was, in effect, but an amendment to the original bill, by which new matter which had transpired since the filing of the original bill was brought into the case, it formed a part of and was tried with the original case. *Mix* v. *Beach,* 46 Ill. 311.

The issue presented for us to determine is, which, if any, of the several writings alleged to have been executed by Amaretta Oliver are valid instruments of title. It is difficult to determine what part of the great mass of evi-

dence presented is true and what part is false. It is apparent that the testimony of Revilo Oliver and Florence Ross is not reliable and can only be believed where it is corroborated. Another difficulty presented to us is, that much of the testimony offered to corroborate their testimony is impeached and is likewise unreliable. We have examined with care the testimony in the record and the original instruments alleged to have been executed by Amaretta Oliver, and shall, generally speaking, pass upon them in the order they affect the title to the property.

If, as it is contended by Revilo, the mother held this property in trust for him, then the subsequent attempts by her to convey the fee simple title to this property were void. The record discloses that in addition to the property here in controversy Revilo and his mother had at times owned other property. All of this property seems to have been lost by Revilo by operations on the board of trade and in other ways, including a matrimonial venture. As was found by the master, it is impossible to tell just what the arrangement was between Revilo and his mother, but it is quite apparent that he occupied toward her a very pronounced fiduciary relation. Any transaction between them by which he would become the beneficiary would be looked upon with disfavor, and the burden would be on him to show that the dealing was had at arm's length. (*Kern* v. *Beatty*, 267 Ill. 127.) It is claimed that the $64,000 note and the trust agreement were forgeries, but from a casual examination of this record it is apparent to anyone that forgery was unnecessary so long as Amaretta Oliver was alive, because she would sign anything that was presented to her for her signature. The transactions between Revilo and his mother with respect to this property do not appear to have been considered by them as binding, because of the inconsistent positions taken by each of them with respect to the several transactions. It is apparent that no consideration passed between Revilo and his mother for the trans-

fer of this property. When Revilo took the title, in 1881, to section 33 by virtue of the sheriff's deed, it was for two inconsiderable judgments against his father. It does not appear whether the money used to pay this small sum belonged to Revilo or his mother. In 1897, when this property was conveyed, first from the mother to Revilo and then from Revilo back to the mother, no money changed hands, though the expressed consideration was $48,000. The evidence in this record is not sufficiently strong to overcome the presumption against the validity of the transfer of this property from the mother to Revilo, and so we hold that the chancellor did not err in decreeing that the trust agreement and the $64,000 note were void.

It follows, therefore, that in October, 1907, when a deed from Amaretta Oliver to Flora Oliver purporting to convey all her interest in this property is alleged to have been made, Amaretta Oliver was the owner in fee of this land. The chancellor held that this alleged deed was a forgery and therefore void. The evidence on this subject is conflicting. Quite a number of witnesses testified that the signature of Amaretta Oliver to the deed was genuine, while other witnesses expressed the belief that it was not a genuine signature. It is the well established law of this State that where in a civil action a criminal act is charged in the pleadings the offense must be proved beyond a reasonable doubt. (*McInturff* v. *Insurance Co. of North America,* 248 Ill. 92.) This the evidence in this record fails to do. But regardless of whether this deed is a forgery or not, Flora Oliver is now estopped from claiming title to these lands. She claimed that this deed was executed in October, 1907, and delivered to her at that time; that when it was acknowledged before C. C. Davis he entered the fact in a notary record required by the law of Texas to be kept. We have examined the notary record of Davis and find that an erasure has been made at the place where this memorandum was entered. Davis explains this erasure, stating that

he started to write too large to get the description in the space provided and so he erased the matter already written and began over again. His explanation is unsatisfactory, because it is clear that a memorandum of a wholly different transfer had been previously entered in this space. Not only was the description of the land changed, but the dates were also changed. If the record of Davis was genuine there was no excuse for Flora Oliver not coming forward at once with her claim of ownership by virtue of an unrecorded deed. She had the testimony of Davis, together with his record, to support her testimony that such a deed had been executed. Instead of this, when Revilo Oliver on March, 3, 1910, with full knowledge of her claim under this unrecorded deed, averred that he was the true owner of all this land by virtue of certain deeds, trust agreements and lien notes, she sat by and without protest permitted this claim to be made against the land to which she now claims title. The record shows that she attended the hearings before the master and that no effort was made by her to present her claims under the suddenly discovered deed until after the master had made his findings adversely to the claims of her husband, Revilo. Estoppel may arise from silence as well as words where there is the duty to speak and the party on whom the duty rests has an opportunity to speak and knowing the circumstances keeps silent. It is the duty of a person having a right and seeing another about to commit an act infringing upon it, to assert his right. (*Milligan* v. *Miller*, 253 Ill. 511.) The party who challenges the title of his adversary to real property must be diligent in discovering that which will avoid the title and render it invalid and diligent in his application for relief. Unreasonable delay in explaining by equitable circumstances has always been declared evidence of acquiescence and will bar relief. (*Howe* v. *South Park Comrs.* 119 Ill. 101.) While the chancellor erred in holding that this deed was a forgery, yet he did not err in holding that Flora Oliver

was estopped from asserting her rights in this land.    It is likewise apparent that even if this deed is not a forgery it was obtained by undue influence exercised over Amaretta Oliver by her son Revilo.    Revilo and Flora Oliver were not married until July, 1907, and it is claimed this deed was executed in October, 1907.    The record shows that Revilo was present at the time it was executed.

We now come to consider the deeds by which Florence Ross and John Oliver claimed title to a part of this land. John Oliver's position all the way through this litigation has been that his mother was incompetent to transact business and was subject to the undue influence of anyone who attempted to exercise his influence over her.    He said that his mother had a weak and vacillating mind for several years before her death, and so stated in his cross-bill and in his answers to the several bills.    As before stated, Florence Ross went to Texas early in January, 1908, and while there secured the deeds here in question.    It appears that on the 27th of January she took her mother to Wichita Falls on the pretense of shopping, and while there these deeds and the will were executed.    The first indications of a diseased mind were manifested by Amaretta Oliver as early as 1900, when, according to Dr. Carson, her family physician, she entertained the fear that she was going to be poisoned.    She would take no medicine, even from him, unless Revilo was present and directed her that it was all right.    Many witnesses from Texas testified to peculiar conduct on her part, especially during the months of December, 1907, and January and February, 1908.    It appears that in November, 1907, she took part in extinguishing a prairie fire which she started and was overcome with exertion and fear.    For several weeks after that she was very feeble in mind and body and never fully recovered.    It was claimed that these deeds were not delivered because Amaretta Oliver continued to exercise control over them and did not intend that they should be delivered until her death.    This is

289 — 41

manifested by the notice of ownership which she prepared and filed in Livingston county. It is apparent from this notice of ownership that the disposition made by the deeds did not please her and that she did not intend that they should be effective. This is also manifested by letters from her to different people and by the holographic codicil to her will. The disposition of the property made in these deeds and by the will executed at the same time is altogether inconsistent with all previous and future declarations of Amaretta Oliver with respect to the disposition of her property. It is undisputed that Amaretta had continually declared to her neighbors, as well as to the family, that Revilo was to have section 33 after her death, and it seemed to be her plan during the last years of her life that Revilo was to have section 33 and John about two-thirds and Florence about one-third of the Germanville lands. Florence had been given Amaretta's interest in an estate of Amaretta's brother Sol, in Indiana. This amounted to about $20,000. There is no dispute in the record that Amaretta held Revilo in great esteem and had great affection for him. This disposition of her property is not supported by any evidence whatever in the record excepting the testimony of Florence Ross. A clear preponderance of the evidence shows that the execution of these deeds and this will was secured by the false representations and the undue influence of Florence Ross. We have in the record the declaration of such fact by Amaretta Oliver, evidenced by the notice of ownership which she acknowledged before Ferguson and filed of record in Livingston county, by the codicil of July 6, 1908, and by letters written by her after the execution of the deeds. It is apparent that at the time these deeds were executed Florence Ross was the dominant party, and her mother was, as she had been for years, subject to the influence of a stronger mind.

The chancellor erred in holding these deeds valid. He should have sustained the master's findings that on Au-

gust 11, 1908, Amaretta Oliver died the owner in fee simple of all the lands here in question, and that all the deeds, trust agreements and other instruments in writing held by her children were void and of no force and effect.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to modify the decree, holding the deeds executed on January 27, 1908, void and ordering the same canceled, and declaring the fee simple title to said property in Flora Oliver, (grantee of Revilo Oliver,) Florence Ross and the heirs-at-law of John Oliver, deceased, as tenants in common.

*Reversed and remanded, with directions.*