Jeffry Hotel Corporation for the Use of Albert Pick & Company, Defendant in Error, v. Thomas Chicopulos, Plaintiff in Error.

Gen. No. 34,913.

Opinion filed October 9, 1931.

SINDEN & HASSELL and CLYDE C. FISHER, for plaintiff in error.

RINGER, WILHARTZ & HIRSCH, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On July 1, 1929, Albert Pick & Company, a corporation, caused a judgment by confession for $4,363.40 to be entered in the municipal court against Jeffry Hotel Corporation, on its ten judgment notes payable to Albert Pick & Co. Six of the notes are dated January 8, 1926, and state they are secured by a chattel mortgage. On July 1, 1929, also, an execution having been issued, the bailiff returned it "no property found and no part satisfied." On the same day, also, an affidavit for a garnishee summons against Thomas Chicopulos, together with the usual interrogatories to be answered by him, was filed. He entered an appearance and subsequently filed an amended answer to the interrogatories "no funds," etc., which answer Albert Pick & Company contested. The cause was called for trial in April, 1930, before the court without a jury, and after hearings had on several days the court, on May 23, 1930, found the issues against the garnishee, and entered judgment against him for $4,363.40. He seeks by this writ of error to reverse the judgment.

The theory of plaintiff's case is that on January 11, 1929, the garnishee purchased certain hotel furniture, etc. (located in a hotel building at 73rd street and Jeffry avenue, Chicago, and on which furniture, etc. Albert Pick & Co. held said chattel mortgage executed by the Jeffry Hotel Corporation) and afterwards sold the furniture, etc., to one Gus Zettas, without compliance with the provisions of section 1 of the "Bulk Sales Act," which is in part as follows (Cahill's St. ch. 121a, ¶ 1, page 2226):

"That the sale, transfer or assignment in bulk of the major part or the whole of a stock of merchandise, or merchandise and fixtures, or other goods and chattels of the *vendor's* business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the vendor's business, shall be fraudulent and void as against the creditors of the said *vendor, unless* the said vendee shall, in good faith, at least five (5) days before the consummation of such sale, transfer or assignment, demand and receive from the *vendor* a written statement under oath of the vendor . . . containing a full, accurate and complete list of the creditors of the vendor, their addresses and the amounts owing to each as near as may be ascertained, *and if there be no creditors, a written statement under oath to that effect;* and unless the said vendee shall, at least five days before taking possession of said goods and chattels and at least five days before the payment or delivery of the purchase price, or consideration of any evidence of indebtedness therefor, in good faith, deliver or cause to be delivered, or send or cause to be sent personally or by registered letter properly stamped, directed and addressed, a notice in writing to each of the creditors of the vendor named in the said statement, or of whom the said vendee shall have knowledge, of the proposed purchase by him of the said goods and chattels and of the price, terms and conditions of such sale: . . . ."

The garnishee's defense was in substance that at the time of said purchase he had reason to believe, and did believe, that one Harold C. Hayes was the owner and vendor of the furniture, etc.; that he procured a written statement, required by the statute, from Hayes under oath, and in good faith endeavored to comply with said statute and did not knowingly violate it; and, furthermore, that Albert Pick & Co. are estopped by their acts from claiming any violation.

On the trial plaintiff called as its witnesses Chicopulos, the garnishee; Lloyd E. Lee, a credit man in the employ of Albert Pick & Co., and said Hayes. Plaintiff also introduced in evidence an inventory of the furniture, etc., in the hotel building and a chattel mortgage (dated January 13, 1926, recorded January 14, 1926) by the Jeffry Hotel Corporation (By L. Oshman, president, and H. C. Hayes, secretary), conveying to Albert Pick & Co., certain described hotel furniture, etc. as security for an indebtedness of $7,794.83, evidenced by 24 notes, each (except the last) for $324.78, and dated January 8, 1926, and maturing monthly thereafter. For the garnishee one of his attorneys, Albert Hassell, testified, as did also William W. Corlett, who in January, 1929, was Hayes' attorney. The garnishee did not again testify. Certain writings were, however, introduced by him.

The garnishee (plaintiff's witness) testified in substance that he owned the land on which said hotel building stood; that *Hayes* operated the hotel under the name of the Jeffry apartments; that Hayes owed him over $5,000 for rent due on a lease of the building; that it was agreed between them that, in consideration of the witness cancelling said indebtedness due for rent, Hayes would convey to him said furniture, etc.; that this transaction was consummated on January 11, 1929; that at that time Hayes executed and delivered a statement under oath in compliance with the statute

as to creditors, etc.; and that subsequently the witness sold the furniture, etc. to one Gus Zettas.

Lloyd E. Lee identified the signatures of Oshman and Hayes on the chattel mortgage( dated January 13, 1926) of the Jeffry Hotel Corporation to Albert Pick & Co. And he testified that the 24 notes mentioned in the mortgage were obtained by Albert Pick & Co. in part payment for the furniture, etc., delivered to the hotel building; that on January 11, 1929, there was due on the account to Albert Pick & Co. a balance of $3,414.28; and that no part thereof had since been paid.

Harold C. Hayes (plaintiff's witness) testified on direct examination that he owned and operated several apartment hotels in Chicago; that he was an officer of the Jeffry Hotel Corporation; that in 1926 Albert Pick & Co. furnished the furniture, etc., for the hotel building known as the Jeffry Apartments; that in January, 1929, there was a balance still due to Albert Pick & Co. for said furniture, etc.; that on January 11, 1929, he had a deal with Chicopulos (garnishee); that "the deal was that the building was not paying, and he said that if I would turn over the furniture to him he would let *me* off the lease,—which I did"; that "I also turned over to him the accounts receivable, or, in other words, the whole hotel"; that the lease of the hotel building "was in my name, personally"; that he "thinks" he transferred that lease to the Jeffry Hotel Corporation prior to January 11, 1929; that when he made his deal with Chicopulos on January 11, 1929, it was really made on behalf of the Jeffry Hotel Corporation; and that when the furniture, etc. was sold to Chicopulos its reasonable, market value was $4,500. On cross-examination Hayes testified that when he sold the furniture, etc. to Chicopulos, the corporation (Jeffry Hotel Corporation) "was not mentioned" and that the deal was made "in my individual name." The witness then

identified "Defendant's Exhibit 1" (which was then shown to him and afterwards introduced in evidence) as bearing his signature, and testified "this agreement I drew up in my own handwriting and signed; it is the agreement whereby the settlement was finally made." The agreement referred to is dated "Chicago, Dec. 18, 1928," is in ink handwriting, is signed "Harold C. Hayes," and is as follows:

"I, Harold C. Hayes, agree to turn over the Jeffry Apt's, free and clear of all indebtedness, to present owner of building, provided he releases said Hayes from all obligations on present lease and returns $2200 check to Hayes drawn on the Continental Bank. This agreement to be effective on twenty-four hours' notice to me."

The witness then was shown a lease from Chicopulos to him (Hayes) as "defendant's exhibit 2" and further testified on cross-examination that "this is the lease I referred to, which was cancelled." His attention was then directed to the fact that the lease did not show any assignment to anyone, and he was asked if he was not mistaken in his previous testimony as to the lease having been assigned to the Jeffry Hotel Corporation. He replied that he could not answer the question; that at the time the lease was drafted "he was an *employee* of Albert Pick & Co."; that "there were other men in the corporation besides myself to more or less help the concern"; that "he, Oshman and Henry Bobbe were stockholders in the Jeffry Hotel Corporation"; that "the lease was supposed to be transferred, but whether it was or not I don't know"; that "either your office or George Lee's office handled the transaction"; but that when Chicopulos took over the lease "it was in my individual name." The witness was shown a check marked "defendant's exhibit 3 for identification" and further testified that "this is the check I had given for rent on this particular lease,

which was supposed to be cancelled by this particular transaction''; that ''his individual signature is on the check''; that ''it is a *Hayes-Metropole* check,'' is not the corporation's check, and ''it has nothing to do with the Jeffry Apartments''; and that ''before this deal was closed I had negotiations with Albert Pick & Co. as to the balance due to it.''

Hayes further testified on cross-examination that on January 11, 1929, he attended a conference in the office of William W. Corlett, who was his attorney and who ''also represented Albert Pick & Co.''; that Mr. Hassell, defendant's attorney, and others were present; that the witness executed certain documents at that time; that Corlett said ''Now, Harold, you are signing an affidavit here that *there are no debts on this property*''; that he (the witness) replied ''Yes''; that he then signed an affidavit to that effect; that he ''doesn't know'' whether or not a bill of sale was then executed; that some question was raised as to certain rents due in January; that certain documents were left with Corlett until it could be ascertained what the amounts of said rents were; and that Corlett asked Albert Pick & Co. for permission to sell the property and ''took that up with Harold Ullman in my presence.''

Defendant's principal witness was William W. Corlett. He testified that prior to January, 1929, he was associated as an attorney at law with a well-known Chicago law firm (naming it); that during January, 1929, he conducted certain negotiations concerning the Jeffry Apartments had between his client, Hayes, and Chicopulos and others; that in the deal Hayes was the seller and Chicopulos the buyer; that during the negotiations he (the witness) ''had dealings with Albert Pick & Co. with reference to the deal''; that during the year 1928 he had acted as Hayes' attorney in certain negotiations with Albert Pick & Co., whereby the Metropole Hotel Co. (of the stock of which Hayes had a control-

ling interest) had assumed liability of a number of chattel mortgages, on the furnishings of other hotels, held by Albert Pick & Co.; that it was finally arranged that "Hayes would turn back to the various owners of these leased apartments the leases he had, make some arrangements for them to take over the furniture, and that *any slack* that there would be in the transaction would then be assumed by the Metropole Hotel"; that for example, "if there was $25,000 due on furniture under the chattel mortgage on the premises and the owners had only paid $20,000, the Metropole would have to take the balance"; that during these negotiations he met Ira Krupnick, vice president of Albert Pick & Co.; that later he had negotiations with Krupnick and one Ullman (a credit man of Albert Pick & Co.) concerning chattel mortgages which Albert Pick & Co. held on the Jeffry Apartment Hotel and one other Chicago hotel; that he (the witness) "repeatedly told Krupnick that these two transactions involved such a small amount of money compared with the whole amount that the whole amount should be turned over against the Metropole"; that one of these transactions was $3,500 and this particular transaction was somewhere around $3,000; that "Krupnick told me that *it would be perfectly satisfactory to throw these particular amounts of indebtedness over against the Metropole a hundred per cent"*; that Albert Hassell, defendant's attorney, then came into the negotiations and he informed the witness that, after investigation of the records, he (Hassell) had not found that Albert Pick & Co. had any chattel mortgage on the furniture, etc. in the Jeffry Apartment Hotel; that the witness telephoned either Krupnick or Ullman in Pick & Co.'s office and was informed that there was such an existing mortgage; that the witness then said over the telephone "You understand if Hayes makes settlement of this thing and gives up these leases, that liability is going

to go over against the Metropole,'' and the reply over the wire was that ''that is perfectly all right''; that shortly thereafter the witness closed the transaction in his office with Hassell,—the latter acting as defendant's attorney; that the witness did not know the Jeffry Hotel Corporation in the transaction, but assumed that Hayes was the owner of the lease because it had been made to him, and the witness also assumed that Hayes had title to the furnishings, etc. in the Jeffry Apartments building; and that the witness concluded the transaction ''on the authority received from Albert Pick & Co.''

Defendant's other witness was Albert Hassell, his attorney in all the negotiations with Corlett and others, which were consummated by the purchase from Hayes of the furniture, etc. in question. Hassell testified that he had numerous interviews with Corlett and that he once had a talk with Krupnick about the matter; that Krupnick said ''that as far as Albert Pick & Co. were concerned they *had been taken care of''*; that the transaction was consummated on January 11, 1929, in Corlett's office; that Corlett, Hayes, he (the witness) and others were present; that defendant took over the property as of January 1, 1929; that in the meantime Hayes had collected some rents, which caused some trouble in making the final adjustment; that Corlett at the time presented an affidavit to Hayes for his signature under the Bulk Sales Law, Cahill's St. ch. 121a, ¶ 1 *et seq.;* that the affidavit was to the effect that there were no debts against the property; that Hayes signed and delivered the affidavit; that at that time Corlett asked Hayes if he (Hayes) ''had taken care of the Albert Pick matter,'' and that Hayes replied that he had; that within a day or two thereafter the matter of rents was straightened out; that defendant then went to the hotel and *Hayes* turned over the possession of the hotel building to him; that that was the last he (the

witness) heard about the matter until subsequently Pick & Co. presented their present claim; that he then called on Corlett and asked to see the affidavit which Hayes had signed; that Corlett searched for the affidavit and finally said that it could not be found; that it had not been discovered at the time of the trial; and that his negotiations on defendant's behalf were had principally with Hayes, whose individual lease of the building was cancelled when the purchase of the hotel furniture, etc. was made by defendant on January 11, 1929.

After a careful review of the present transcript we are of the opinion that the finding and judgment are not sufficiently sustained by the evidence. We do not think under all the facts and circumstances in evidence it can be said that the garnishee (defendant) intentionally violated the provisions of the Bulk Sales Act (above set out). On the contrary, the uncontradicted testimony of several witnesses discloses that the seller (Hayes) on the day of the consummation of the sale, in the office of Corlett and in the presence of Hassell, defendant's attorney, made a "bulk sales" affidavit to the effect that there were no unsatisfied debts or claims on the property. And we think that the testimony of Hayes, taken in connection with that of defendant's witnesses, Corlett and Hassell, and particularly what Krupnick (vice president of Albert Pick & Co.) had stated to them, discloses such a state of facts as should estop Albert Pick & Co. from claiming any violation by defendant of said Bulk Sales Act. (See section 24 Garnishment Act, Cahill's St. ch. 62, ¶ 24; *LaSalle Opera House Co. v. LaSalle Amusement Co.,* 289 Ill. 194, 199; *Bondy v. Samuels,* 333 Ill. 535, 545, 546; *Oliver v. Ross,* 289 Ill. 624, 640.)

The judgment of the municipal court is reversed and the cause remanded.

*Reversed and remanded.*

KERNER and SCANLAN, JJ., concur.