(No. 15000.—Judgment affirmed.)

REVILO OLIVER, Appellee, *vs.* MARY E. OLIVER *et al.*
Appellants.

*Opinion filed October 28, 1924.*

1. WILLS—*what evidence may be heard on probate of a will in
probate court.* Where a will is offered for probate in the probate
court the only testimony to be heard as to the due execution of
the will and the competency of the testator or testatrix to execute
the will is that of the attesting witnesses, but the contestants, un-
der section 2 of the Wills act, may offer proof of fraud, compulsion
or other improper conduct sufficient to invalidate the instrument
as a will.

2. SAME—*what fraud may be proved to invalidate a will under
section 2 of Wills act.* Fraud permitted to be proved to invalidate
a will under section 2 of the Wills act is not intended to embrace
the testamentary capacity of the testator or testatrix, but it relates
to any trick or device which induces the signing of the will under
the impression that it is something else, the alteration of the will
after it is signed, the substitution of another paper for part of the
will after it has been signed, and matters of like character.

3. SAME—*what evidence cannot be introduced by contestants on
appeal to the circuit court.* On appeal to the circuit court from an
order of the probate court allowing or refusing probate of a will
the proponents may support the will by any evidence competent
to establish a will in chancery, but the contestants have not the
privilege of introducing additional testimony except in rebuttal of
that introduced by the proponents, and where the proponents have
abided by the testimony of the attesting witnesses, which estab-
lished the will in the probate court, the contestants cannot intro-
duce testimony that the signature to the will is not genuine.

4. SAME—*when heir is not a competent witness under section 2
of Evidence act.* On appeal to the circuit court from an order re-
fusing or allowing probate of a will on the petition of the chief
devisee or beneficiary, an heir interested in the defeat of the will
is not a competent witness to testify of his own motion in regard
to its execution.

5. SAME—*devisee may testify to explain his possession of will.*
The chief devisee or beneficiary seeking to probate a will may tes-
tify in the circuit court to explain how he came to be in possession
of the will and as to any facts occurring since the death of the
testatrix, and such testimony does not authorize the parties contest-

ing the probate to offer further testimony on the subjects of the
execution of the will and the competency of the testatrix where
such issues are not raised by the testimony of the proponent, the
will having been established by testimony of the attesting witnesses.

6. SAME—*when record of probate of former will may be intro-
duced.* In a proceeding to probate an alleged will in the same court
in which another will of the same testator or testatrix has been
probated or in which the record of a former probate has been filed,
the record of the probate of the earlier will may be introduced for
the purpose of having the order of probate of the former will set
aside in the order probating the later will; and the fact that the
testimony of the subscribing witnesses and other testimony appear-
ing in the record of the former probate includes testimony as to
the mental capacity of the testatrix does not authorize the intro-
duction of testimony on that subject on an appeal to the circuit
court, where the proponent has not offered such evidence.

7. SAME—*when will consisting of separate sheets is sufficiently
established.* Where a will consists of two separate typewritten
sheets and there is no direct reference in the second sheet to the
first sheet of the will, the testimony of the attesting witnesses as
to the contents of both sheets when they witnessed the will, the
substance of which they remembered because they read the will or
saw its contents at the time it was executed, is competent and suf-
ficient to establish and identify the two sheets as constituting the
complete will of the testatrix.

8. SAME—*probate of former will does not bar probate of subse-
quently discovered will.* There is no statute or law limiting the
time of probating a will to any given number of years, and the pro-
bate of a former will and granting of letters testamentary, or the
administration of an estate, will not bar the probate of a subse-
quently discovered will.

9. SAME—*prior suit in chancery in regard to an estate will not
bar probate of subsequently discovered will—bill of review.* An ad-
judication in chancery in partition or otherwise, involving property
of a decedent's estate, will not bar the probate of a subsequently
discovered will, as the probate court having original jurisdiction of
the probate, and the circuit court on appeal, must admit the will
to probate if the proof is sufficient, and whether or not any further
relief can be obtained by the beneficiaries under the will is a mat-
ter proper for equity under a bill to review the chancery adjudica-
tions after the will is probated.

10. SAME—*will should be contested by bill in chancery.* Where
a will is sufficiently established by the testimony of the attesting
witnesses it should be admitted to probate, and the court in such
proceeding should not entertain any evidence upon the question

whether or not the will is a forgery, or whether or not it was executed because of undue influence, or whether the testator or testatrix was incapacitated, as the contestants of the will have their remedy by bill in chancery to set the will aside on such grounds.

APPEAL from the Circuit Court of Livingston county; the Hon. EDWARD BARRY, Judge, presiding.

W. R. HUNTER, F. A. ORTMAN, ADSIT & THOMPSON, and JESSE J. HERR, for appellants.

ROBERT H. PATTON, C. S. SCHNEIDER, JOHN J. MORRISSEY, and NEIL KERR, for appellee.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

On July 26, 1921, Revilo Oliver filed a petition in the county court of Livingston county for the probate of an alleged will of his deceased mother, Amaretta Oliver. On the same day he filed his affidavit of the death of Amaretta in the State of Texas on August 11, 1908. The petition alleges that at the time of her death she was the owner of about 1110 acres of land in Livingston county, Illinois, and left surviving her as her only heirs-at-law, John Oliver and petitioner, her sons, and Florence Ross, her daughter; that John Oliver has since died, leaving him surviving Mary E. Oliver, his widow, and Orval, Arthur and Ralph Oliver and Daisy West, his children and only heirs-at-law. The instrument offered for probate was dated September 23, 1904, and purported to be witnessed by Alma E. Cowden and George M. Joseph. Upon a hearing the county court denied the probate thereof. On appeal the circuit court of said county admitted the instrument to probate as the last will and testament of Amaretta Oliver. This is an appeal from that order by the contesting heirs of Amaretta Oliver.

The instrument offered for probate was typewritten on two separate sheets of paper, except the signatures of the testatrix and of the subscribing witnesses and the two fig-

ures designating the day of the month on which the will was executed. By it the testatrix devised all of section 33, town 26, north, range 8, east of the third principal meridian, and 220 acres in sections 5 and 6, town 25, north, range 8, east of the third principal meridian, all in Livingston county, to her son Revilo Oliver, preceded by the statement that he was the actual owner of the property and that she held the record title in trust for him. By the second clause she devised to her son John L. Oliver 125 acres, more or less, in section 25, which she designated as "my Germanville farm," followed by the statement that she was the actual owner of the same. In the third clause she devised to Florence Ross all right and title that she then had or might thereafter acquire in 122 acres of other lands in section 25, stating that this last tract, with another 80 acres of land sold to J. W. Walsh, constituted her share or interest in 420 acres of land that her son Revilo and she bought for $19,000 "under the decree of Judge Moffitt in the Ross-Payson case." By the fourth clause of the will she provided that her son Revilo was to have possession and full control of all of said land, with full power to collect all rents that may become due from time to time and pay out the same as he may deem proper, until he has collected enough money from the proceeds of the land to pay all mortgages and indebtedness that they, or either of them, owe on said property, over and above all expenses that may accrue, including taxes, improvements and living expenses, and all necessary expenses of every kind whatsoever, and "all money that may be on hand after all mortgages and indebtedness are paid and satisfied in full, and all of said property shall be free and clear of all indebtedness of every kind whatsoever, I give and bequeath to my said son Revilo."

The four clauses aforesaid and the preliminary clause in the will were written on the first sheet of the will. On the second sheet was written this provision: "In case any of my said children be dissatisfied with the terms and con-

ditions of this will and they cause any trouble or litigation or contest the validity of this will in any way, then in that case they shall not have or receive any part or portion of the said property they were to have under the terms of this will, in which case the property such child or children would have inherited under the terms and provisions of this will had they not caused any trouble or raised any issue against this will I give and bequeath to H. P. Beach, of Piper City, Illinois, or to any attorney that may be employed to uphold and enforce the terms and provisions of this will. Said property so willed to said attorney shall be in full compensation for all services he may render on behalf and in defense of this my last will and testament." The attesting clause was in these words: "Signed in the presence of," and it was signed by the two attesting witnesses.

The issues presented in this case may be best understood by a review of a short history of the Oliver family and of the previous litigation involving the same real estate devised by the will in controversy. Amaretta Oliver held the title to the 1110 acres of land here in controversy previous to her death. She had lived in Chatsworth, in Livingston county, for a number of years and up to about the latter part of 1904, when she moved to or was temporarily residing in Texas. Revilo Oliver, her son, had lived with her from his birth until her death. Her son John had left home when a young man and maintained his home elsewhere. Florence Oliver left home at the time of her marriage to Thomas Ross, in 1890, and had not lived at her mother's home since that time. After the death of Amaretta Oliver, Revilo filed a bill in chancery in the circuit court of Livingston county setting up his claim to a part of the land involved in this suit, referred to throughout the litigation as section 33. His claim was based upon a note for $64,000 which he claimed to hold for the purchase price from his mother and his possession of the land for a number of years. He also claimed to have another instrument signed

by his mother by which she declared that she held in trust
for him two other tracts of said land, one containing 160
acres and the other 185 acres.   On September 8, 1904, his
mother executed a former will, by which she devised to
Revilo all of section 33, and to her son John and to her
daughter she devised other lands.   This will was signed in
the presence of her sons, Revilo and John, and witnessed by
them, and was probated in the State of Texas, and in the
probate order the Texas court held and decided that neither
of the sons would take any title under the will because of
the fact that they were witnesses to the same and proved
the same by their testimony.   A duly certified and authenti-
cated copy of the record of the probate of this will was
filed in the county court of Livingston county, and there-
after that will became the duly proved will in the county
court of said county.   To this will an alleged holographic
codicil was added, in this language:   "To my administra-
tors, Warren and Nathan Goodell:   If I should die before
the mortgage is paid, help Revilo get my property back and
divide as stated in this my last will."   The codicil is signed
by the testatrix and bears date of July 6, 1908.   There was
also an alleged deed executed by Amaretta Oliver to Flora
Oliver, wife of Revilo, to section 33 and other lands, bear-
ing date October 25, 1907, which was recorded July 31,
1914.   Early in January, 1908, Florence Ross visited her
mother in Texas and induced her mother to convey to her,
by deed, section 33, and also by another deed 142 acres of
the Germanville lands to her brother John.   On the same
date Amaretta executed a will by which she devised to
Revilo a life interest in about 200 acres of the Germanville
lands and the remainder in fee to his brother John.   All
the rest and residue of her estate was devised to Florence.
On May 5, 1908, Amaretta signed a declaration and a notice
to all men, etc., that she claimed the legal title and was the
lawful owner of section 33, and that the deed to Florence
was procured by fraud and misrepresentation and without

consideration, and that unless Florence re-conveyed the same to her without litigation she would file a bill in chancery to have the same set aside. On March 3, 1910, Revilo filed his bill in the circuit court of Livingston county, setting out all his rights and interest in said lands and setting up his grounds for setting aside the deed to Florence. Answer was filed to the bill by Florence and John, and John filed a cross-bill. Later Revilo filed an amended bill, to which answers were filed, and still later additional amended bills, and finally Flora Oliver, wife of Revilo, filed her bill claiming title under the deed to her. There was a final decree rendered in the circuit court which was reviewed by this court in *Oliver* v. *Ross,* 289 Ill. 624, and this court reversed the decree, holding, in substance, that all said instruments were invalid and of no force and effect, and that Amaretta Oliver died the owner in fee of all of the lands in question in the suit, and remanded the cause, with directions to the lower court to modify its decree and to hold and decree in accordance with the finding of this court, and to declare the fee simple title to said property in Flora Oliver, Florence Ross and the heirs-at-law of John Oliver, deceased, as tenants in common. We refer to the decision of this court for a more complete history and statement of the issues in said cause. On remandment of the cause by this court to the circuit court of Livingston county, that court on January 23, 1920, entered a final decree setting aside in express terms all the instruments aforesaid, and declaring, in substance, that Amaretta Oliver at the time of her death was seized in fee of all the lands in question in that suit and died intestate, and that by reason of the death of John L. Oliver intestate pending the litigation, and of a deed by Revilo to Flora Oliver to all of his interest in said property, the court declared the fee simple title to the property to be vested in Flora Oliver, Florence Ross and the heirs of John L. Oliver, subject to the dower of Mary E. Oliver, widow of John L. Oliver.

On May 29, 1920, a decree for partition was rendered in the circuit court of Livingston county of all the aforesaid lands except lot 5 in the northeast quarter of section 5, in which the court found that Amaretta Oliver died intestate August 11, 1908, seized in fee of said lands, and that the title thereto became vested in fee simple in the heirs of John Oliver, subject to the dower of Mary E. Oliver, his widow, Flora Oliver and Florence Ross, as tenants in common, the widow and heirs of John Oliver being seized of an undivided one-third, Florence Ross of an undivided one-third and Flora Oliver of an undivided one-third, subject to whatever interest Louis G. Coleman, as trustee, may have in the share of Flora, and commissioners were appointed to make partition. The decree was rendered on a bill filed in said court for partition by Orval Oliver, Daisy G. West, Arthur Oliver, Ralph E. Oliver, Omar R. Bowman and Mary E. Oliver, widow and heirs of John Oliver, against the parties named in the decree and others. There was also a decree rendered for partition of the other tract of land in section 5 in the district court of the United States in the southern district of Illinois, southern division, on a bill filed by Flora Oliver against Florence Ross and John Oliver, in which it is claimed by the contestants in this case that there was a sale of the property made in accordance with the decree and that Mrs. Ross and Mrs. John Oliver became purchasers of the property and executed and delivered notes as part payment thereof.

The due execution of the will offered for probate in this case was proved in the usual manner by the two subscribing witnesses, who testified in the circuit court in person and whose affidavits of the due execution of the will filed in the county court were offered as part of the proofs. The subscribing witnesses testified, in substance, that at the time the will was executed they were at Chatsworth on a visit, where the testatrix then lived, and that they were asked by her at her home to witness the execution of the will; that

she, after writing the figures "23" in the line containing the date of the will, signed the same in the presence of both of them, and that they each, at her request and in her presence, signed as attesting witnesses, and that there was no one else present except H. P. Beach, whose name appears on the second sheet of the will; that she was then of sound mind and memory and free from any restraint, and that she stated at that time that she was going to take a trip and thought it better to make a will before going. It also appeared from their testimony that the testatrix particularly requested them not to say anything about her making the will and that she did not want her son Revilo to know she was making a will; that the testatrix read the will before she signed it and was well pleased with it, and that they examined the contents of the will before they signed as attesting witnesses. By their testimony they were able to and did identify both sheets of the will that were offered for probate, and they stated in their testimony that both those sheets were lying on the table before the testatrix when she signed it and when they witnessed it. The attesting witness Mrs. Franke, who signed her name Alma E. Cowden, testified that the testatrix told her just before its execution that Judge Beach "made out the will for her," and that he was present when the will was executed and made mention of the fact that Mrs. Oliver's name was first on the first sheet of the will and that Revilo's name was last written on the sheet, and that he regarded that as a good omen; also that Beach referred to the will as a masterpiece at a time when comments were being made as to the contents of the second sheet, and that Mrs. Oliver seemed to be very much pleased with the part of the will providing that any contestant of the will should take nothing by the will and his or her part go to the lawyer that defended it.

Revilo Oliver testified, in substance, as follows: He filed the petition for probate of this will and first learned of the existence of it about the middle of July, 1921. He

received it through the mail at Springfield, Illinois, where he then lived, in an envelope which was offered as an exhibit. Accompanying this will was a letter dated at Chicago July 9, 1921, which was also offered as an exhibit and was signed by Gerald Morrow, and the envelope containing it was postmarked Chicago, July 11, 1:30 A. M., 1921. The body of the letter is in this language: "In my correspondence with you at Hoopeston in 1908 I told you that you were in danger of losing your property and I knew the party that had your papers and how to outwit them; that I would assist you for six per cent. Believing you would accept this offer I got possession of one of the papers, but as you did not answer my last letter I did not go any further. I have kept this paper ever since, not knowing exactly what to do with it. In looking over some old papers the other day I came across this old paper,—your mother's will,—so I am enclosing it in this letter. If it is of any benefit to you, you may give me what you think is right." The witness further testified that he wrote to Morrow at Chicago and his letter was returned, and that he has not been able to identify or find the person who wrote this letter. He positively stated that he had never known about his mother making such a will before. He testified about receiving two former letters from Morrow from Hoopeston, Illinois, in 1908. In the first letter Morrow wrote him that witness was in great danger of losing his entire estate, and that, in fact, he had lost it; that the writer knew how to save it for him and would tell him, if terms could be made, and requested great secrecy in the matter and that his letter be returned. In the second letter the writer asked for further information about the property, and said: "You offer to make terms to get any paper I have in my possession. I have none, but know of papers that another does have, and I know how to outwit them and how you can get your property back, and will tell you what I know for six per cent of what I save you." The further testimony of Revilo is to

the effect that he was never able to meet Morrow; that he looked after the affairs of his mother up to her death and at the time of her death took charge of her papers and that this will was not among them; that Florence Ross, his sister, had been at his mother's and got some papers from her in January, 1908. His son, Revilo, Jr., corroborated him as to the receiving of the last letter from Morrow, postmarked at Chicago.

Appellee introduced a transcript or certified copy of the records of the county court of Livingston county showing the recording of the authenticated copy of the record of the probate court of Wichita county, Texas, concerning the probating of the former will of Amaretta Oliver above referred to, attested and proved by the attesting witnesses, Revilo and John Oliver. This record was a complete record and showed the petition of Revilo Oliver filed in the Texas court August 11, 1908, for the probate of the will, stating the date of the death of the testatrix and who were her heirs. The record also contains the testimony in the probate court of Texas and a copy of the will and the codicil, which will was dated September 8, 1904, and the codicil July 6, 1908; also the proper certificates of the county clerk of Wichita county, Texas, and of the county judge. The county clerk of Livingston county certified that the authenticated transcript of the record of the Texas court was filed in his office January 16, 1911.

The appellants, contestants of the will, offered in evidence the records of all the chancery proceedings in the circuit court, the one reviewed by this court and the two partition proceedings; also the opinion of this court in 289 Ill. 624, and the remanding order in the same cause. This evidence was received by the court subject to objection, as we understand the record. They then offered to prove that at the sale in the partition suit in the district court of the United States Florence Ross and Mrs. John Oliver purchased the property and executed and delivered notes in

part payment thereof, but the court sustained objections to the same as immaterial. They then proved by Caroline B. Herr, daughter of H. P. Beach, that he died in October, 1910, in Piper City, where he lived, and that she was associated with him in his business and was always in his office; that he was county judge of Ford county prior to 1904 and served as such judge for three terms. They further offered to prove by this witness that her father never used a typewriter in preparing any of his legal papers, including wills, and never dictated anything to anyone else except her, and that all the legal work that he did was done in longhand. They also offered to prove by Florence Ross that the signature to the purported will was not the genuine signature of Amaretta Oliver, but the court sustained objections to the offered testimony of these two witnesses as incompetent.

In their argument appellants contend that the will which was offered for probate is a fabrication, and that this court ought to so hold and reverse the judgment of the circuit court for that reason. They recite a number of what they call unusual omissions of the draftsman in drawing the will, such as the failure of the testatrix to dispose of her personal property, to name an executor, to give the address of the attesting witnesses, to number the pages of the will and to attach them together, to append to the will the ordinary complete attesting clause, and the unusual circumstance of Beach drawing the will so as to make himself a beneficiary in case it was contested and then publicly boast that it was a masterpiece of his handiwork. They also emphasize the fact that the first page of the instrument bears a striking resemblance to various documents drafted by Revilo Oliver, as is shown in the case of *Oliver* v. *Ross, supra,* and that Beach is long since "conveniently dead." They also complain of the fact that the court refused to allow them to prove by Beach's daughter that he never used a typewriter,

and to prove by Mrs. Ross that the will was a forgery and did not bear the true signature of the testatrix.

It may be admitted that the will offered for probate, and the testimony, disclose unusual facts, as contended, and we might further add that all the litigation between the Oliver heirs presents very unusual facts and circumstances. Nevertheless, the positive testimony of the attesting witnesses clearly establishes the facts that the will was duly executed by the testatrix and that she was competent to execute the same. Both sheets of the will were positively identified as containing the two parts of the will and all of the will, and that these sheets were present and in the possession of the testatrix when she executed them as her will. When a will is offered for probate in the probate court the only testimony to be heard by that court as to the due execution of the will and the competency of the testator or testatrix to execute the will is that of the attesting witnesses. The second section of our statute on wills makes this very plain, and under that section this court has positively held in a number of cases that only the testimony of the attesting witnesses can be heard in proof of the foregoing facts, with the privilege to contestants to offer proof of fraud, compulsion or other improper conduct sufficient to invalidate the instrument as a will. (*Speer* v. *Josenhans,* 274 Ill. 237; *Stuke* v. *Glaser,* 223 id. 316; *In re Estate of Arrowsmith,* 206 id. 352; *Greene* v. *Hitchcock,* 222 id. 216; *Andrews* v. *Black,* 43 id. 256.) Section 13 of the statute on wills makes an exception to this general rule in favor of the proponent of a will offered for probate on an appeal to the circuit court in a case where the county court has either refused or allowed probate of the will. On such appeal the proponent may support the will by any evidence competent to establish a will in chancery, but the contestant has no such privilege to offer outside evidence against the probate of the will, unless the proponent avails himself of such further testimony to support the will. The proponent

in this case confines the testimony as to the execution of the will and as to the competency of the testatrix to make a will to that of the attesting witnesses. This court expressly held, under similar circumstances, that the contestants were not allowed, under the statute, to introduce testimony to the effect that the signature to the will was not the genuine signature of the testatrix, in the case of *Speer* v. *Josenhans, supra.* In the case of *Stuke* v. *Glaser, supra,* we held that the fraud permitted to be proven to invalidate a will under the second section of the statute on wills was not intended to embrace the testamentary capacity of the testator, but that it relates to such conduct as a trick or device by which a person may be induced to sign the paper under the impression it is something else, or to the alteration of the will after it is signed, or the substitution of another paper for part of the will after it has been signed, and matters of like character.

Under the ruling of this court in the foregoing cases the court properly sustained an objection to the testimony of Florence Ross, offered by the contestants, to the effect that the signature to the will in question is not the genuine signature of the testatrix. This testimony could only have the effect of rebutting that of the attesting witnesses, who testified that the testatrix did sign the will, that they saw her sign it, etc. We may further say that the offered testimony of this witness was incompetent on the further ground that she was an incompetent witness under the second section of our statute on evidence and depositions, as has been repeatedly held by this court. *Taylor* v. *Pegram,* 151 Ill. 106; *Bevelot* v. *Lestrade,* 153 id. 625; *Bardell* v. *Brady,* 172 id. 420; *Waugh* v. *Moan,* 200 id. 298.

The offered testimony of Caroline B. Herr, to the effect that Beach never used a typewriter in preparing any of his legal papers, including wills, is of like character as the offered testimony of Mrs. Ross, and the court properly sustained an objection to it. This testimony would have tended

313—40

to rebut the testimony, in some slight degree, of the attesting witnesses to the effect that the two typewritten sheets offered for probate were produced by Beach at the testatrix's home at the time aforesaid and were executed as her will.

The testimony of Revilo Oliver and his son, Revilo, Jr., was proper and competent. In the first place, it was incumbent on Revilo to account for his possession of the will he was offering for probate. In the second place, it was incumbent upon him to show that he did not know of its existence until a short while before it was offered for probate, otherwise he would not have been permitted to have it probated as a will in his favor after the former will had been probated and after the various litigation aforesaid had taken place between him and the other heirs of Amaretta Oliver. He was a competent witness on this matter for the reason that all the facts that he testified to occurred since the death of his mother. There was none of his testimony that tended to establish the will in question,—at least it was not offered with that view,—and the testimony of these witnesses on the part of the proponent did not authorize the contestants to offer further testimony on the subjects of the execution of the will and of the competency of the testatrix. Proponent offered this evidence to avoid the ruling of this court in *Conzet* v. *Hibben, 272* Ill. 508, wherein we held that if the heirs of a testator, with knowledge of the existence of his last will, consent to the probate of an earlier will making a different disposition of the testator's property, such heirs will be estopped to seek probate of a later will. The certified copy of the record of the probate of the former will was offered in evidence by the proponent under the ruling laid down by this court in *Conzet* v. *Hibben, supra,* that in a proceeding to probate an alleged will in the same court in which another will of the same testator has been probated, the record of the probate of the earlier will may be called to the court's attention without filing a plea for the purpose of having the order of probate of the

former will set aside in the order probating the later will. The court in this case did by its order set aside the probate of the former will, and no prejudicial error was committed in doing so. The practice was proper, and the only objection that we can see to the court's order in setting aside that record would be the uselessness of such an order, as it clearly appears by the former litigation reviewed in this court, to which reference has already been made, that the former will has long since been declared null and void and of no effect. The testimony of the subscribing witnesses, and other testimony appearing in that record which was taken in the Texas court, was merely a part of the certified record, and such testimony concerning the capacity of the testatrix to make a will at that time, etc., was only offered as a part of the record and not for the purpose of showing testamentary capacity of the testatrix at that time. The court did not so receive it and it was not so considered by the court. Therefore the claim that this testimony or this record was considered by the court as further evidence of the testamentary capacity of testatrix is not well founded.

The full contents of the will, in substance, is as above stated. There is no direct reference in the second sheet to the first sheet of the will. It, however, does appear from the second sheet and the contents thereof that reference is made to matter in a previous part of the will that does not appear on that sheet. Besides, the attesting witnesses by their testimony completely identified the two sheets of the will as the two sheets executed by the testatrix as a will, and they testified that they were able do so by the contents of the will, the substance of which they remembered because they read the will or saw its contents at the time it was executed. Their testimony was competent to prove these facts, and under the holding of this court in *Harp* v. *Parr*, 168 Ill. 459, the identity of the two sheets of the will must be held to be complete, and there is absolutely no ground shown by the contestants for our holding that the will

was not duly proved as the last will and testament of the testatrix.

The records of the former litigation in the chancery courts constituted no bar to the probate of this will. The fact that those cases adjudicated and settled the question of intestacy of Amaretta Oliver and the right of her heirs to the property described in this will is not sufficient ground for holding that the doctrine of estoppel by verdict applies to the probating of this will. The probate of this will is not an attack upon the adjudications aforesaid. The probate court has no jurisdiction to annul any of those proceedings or to enter any order that would annul the same. We think it equally clear that the chancery courts aforesaid cannot, by any adjudication whatever of the nature set forth in the records, take away the jurisdiction of the probate court of said county to probate this will. It cannot be denied that the probate court had the sole original jurisdiction, under our constitution and our statute, to probate the will. There is no statute or law in this State limiting the time of probating a will to any given number of years. The probate of a former will and the granting of letters of administration to executors under such will, or the administration of an estate of intestate property, have never been held in this State to bar the probate of a subsequently discovered will. There is no reason why any similar adjudication of a chancery court should prevent such probate. Our statute expressly provides that if, at any time after letters of administration have been granted, a will of the deceased shall be produced and probate thereof granted according to law, such letters of administration shall be revoked. It is not an uncommon thing in this State for a second will to be probated after a former will has been probated, or for a will to be probated after administration has been begun on the estate as intestate property. This court has also expressly held that a will may be probated at any time after it has been discovered. (*Rebhan* v. *Mueller,* 114

Ill. 343.) Our conclusion is that the adjudications aforesaid have nothing whatever to do with this case, and that there is no occasion for discussing the doctrine of estoppel by verdict, raised by the contestants in this case.

The adjudications in the chancery courts are adjudications that are binding on the parties to those suits and will continue to be so binding until in some way modified by those courts. All of those decrees were rendered in 1920 and later. At the time this will was probated all of the former decrees were subject to review by a bill of review for newly discovered facts sufficient to authorize the same. (*Waterman* v. *Hall,* 298 Ill. 75.) It was not the province of the probate court to determine whether or not this newly discovered will would furnish sufficient grounds for a supplemental bill to review those adjudications. It was simply the duty of the probate court, under the law, to hear the evidence and admit the will to probate if the proof was sufficient. The same is true as to the circuit court on appeal from the county court, and the same is also true as to this court.

It has been frequently decided by courts of last resort in this country that the distribution of an estate as intestate property will not prevent the probate of a subsequently discovered will as a basis for establishing the rights of the legatees. It was so decided in the following cases: *Agnew's Appeal,* 37 Pa. 467; *Miller* v. *Coulter,* 156 Ind. 290, 59 N. E. 853; *State* v. *Second District Judge,* 17 La. Ann. 189; *Stackhouse* v. *Berryhill,* 47 Minn. 20, 49 N. W. 392; *Pinkerton* v. *Walker,* 3 Hayw. (Tenn.) 221; *In re Estate of Walker,* 36 L. R. A. (N. S.) 89. In the case last cited it was held by the California Supreme Court that neither an order admitting a subsequent will to probate nor the effect of that order is in anywise an attack, direct or collateral, upon the decree or order of the probate court of distribution among the heirs. It was further held that if through accident, fraud or mistake the distributees are hold-

ing property under the decree to which they are not entitled, equity will do justice not by overthrowing the decree of distribution but by declaring the distributees to be voluntary trustees of the rightful owners of the property. The court cites a number of authorities in support of this doctrine. The court further held that it was only in the probate court that the status of the instrument offered for probate could be established as a will. In other words, the first requisite to any character of remedy under a subsequently discovered will is to have the will probated in the proper court. Whether or not any further relief can be obtained by the beneficiaries under the will is a matter proper only for a chancery court to inquire into after the will is probated. It was very aptly said in the California case to which we have just referred: "The sanctity and immunity of a decree of distribution which has become final attaches to the decree itself, and not to those who under it may have derived an unconscionable advantage through fraud, accident or mistake. Such questions the probate court does not possess the requisite machinery to try. They belong in a court of equity." We adopt the reasoning of the court in that case and in the other cases cited, and hold in this case that the aforesaid decrees in chancery, while binding decrees upon the parties to those suits, are in no way attacked by the probate of this will. Those decrees, therefore, were not a matter of consideration by the probate court on the question of admitting the will to probate. So far as the probate court knew or this court may know, no benefit whatever may come to the proponent of this will by the use of it in any subsequent proceeding by him. That is a question that is not to be considered at all. It was simply and clearly the duty of the probate court, and of the circuit court on appeal, to hear evidence under the well established rules for probating a will and to either admit it to probate or deny probate of it, as the evidence introduced warranted. The circuit court properly admitted this will to probate. The

appellants have their remedy by a bill in chancery that is sufficiently broad to enable them to put in any proper evidence, if such they may have, that the will is a forgery, or for any other reason that the probate of the will should be set aside. The narrow and summary procedure for the probate of a will did not warrant the court in entertaining any evidence on the question whether or not the will is a forgery, or whether or not it was executed because of undue influence, or for any other reason the testatrix was incapacitated to make a will.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*