HANS BUERGER, Appellee, vs. HERMAN MAX BUERGER
et al.—(THEODORE H. WUNDERLICH et al. Appellants.)

*Opinion filed June 18, 1925.*

1. RES JUDICATA—*general rule as to when a former judgment is conclusive.* Where a fact necessarily involved in the litigation has been decided in a suit and again becomes a matter in issue between the same parties in a subsequent suit the former judgment is conclusive as to such matter.

2. WILLS—*effect of probate of a will.* A judgment ordering the probate of a will, as prescribed in the statute, is merely that the will be admitted to record, and its effect is that the will shall be good and available in law for the granting, conveying and assuring of property, real and personal, thereby given, granted and bequeathed; but such judgment is not final and is subject to be set aside by a proceeding in chancery begun within a limited time after probate.

3. SAME—*extent to which will may be contested on appeal from probate.* Under section 13 of the Wills act, as amended, proponents of the will may, on appeal from an order either allowing or denying probate, support the will by any evidence competent to establish a will in chancery; but the contestants are limited, as to evidence of the execution of the will and the testamentary capacity of the testator, to the subscribing witnesses, although they have the right to show fraud, compulsion or other improper conduct by the testimony of other witnesses. (Contrary expression in *Craig v. Trotter,* 252 Ill. 228, overruled.)

4. SAME—*what "improper conduct" or "compulsion" may be shown in probate proceeding.* In the statutory provision allowing contestants of a will to show fraud, compulsion or other improper conduct in the execution of the will, "compulsion" refers to actual constraint or pressure, physical or otherwise, amounting to duress, or threats to compel the execution of the instrument; and the general words "other improper conduct" refer to other acts of a kind similar to those specifically mentioned.

5. SAME—*probate and contest of will are statutory proceedings.* The probate of a will is a special statutory proceeding, and the whole question of the devolution of property by will, including the execution, probate and contest of wills, is statutory.

6. SAME—*purpose of a proceeding for probate.* Although the proceeding for the probate of a will is now regarded as in the

**317—26**

nature of a proceeding *inter partes* and not *ex parte,* no issue is required to be made between those who assert and those who deny the validity of the will, and the purpose of the proceeding is merely to make a *prima facie* case of the execution of the will and the capacity of the testator, so that the estate may be cared for and the administration proceed, reserving to any person interested the right to contest the validity of the will at any time within a year after probate.

7. SAME—*probate of will has no weight in proceeding to contest—burden of proof.* In a proceeding to contest a will every fact necessary to establish a will in chancery is open to inquiry without regard to the fact that the instrument has been admitted to probate, the trial is *de novo,* the burden of proof is on the proponents to establish the existence and validity of the will, and the issue is submitted to the jury as a new and original question.

8. SAME—*what is not evidence of lack of testamentary capacity.* To trust one's affairs to a confidential agent, to confide in him completely and to rely unquestioningly on his judgment are matters not necessarily evidencing a lack of sound and disposing mind and memory.

9. SAME—*when a person is possessed of testamentary capacity.* One who has sufficient mind and memory to understand the business of making a will, is able to recall the natural objects of his bounty, the property owned and the disposition desired to be made of it, is possessed of testamentary capacity.

10. SAME—*excluding relatives without reason does not indicate want of testamentary capacity.* The fact that a testatrix excluded certain relatives from any share in her estate, without any reason therefor or even because of a baseless prejudice, does not indicate a want of testamentary capacity, provided such attitude does not amount to an insane delusion.

11. SAME—*what does not show want of knowledge of relatives.* The fact that a testatrix made a bequest to her "sister, Louise Buerger," who had died long before the execution of the will, which the testatrix well knew, is not evidence that she had not sufficient mental capacity to know who her relatives were and to understand the contents of her will, where the deceased sister left a daughter, Louise Buerger, to whom the testatrix evidently intended to make the bequest.

12. SAME—*mere existence of a fiduciary relation does not raise presumption of undue influence.* The mere existence of a fiduciary relation does not raise a presumption of undue influence in the case of a will made by a testator in favor of the fiduciary, but the actual exercise of undue influence operating at the time of the

execution of the will must be shown or it must be shown that the will was drawn by the fiduciary.

13. SAME—*only evidence favorable to contestant may be considered on motion of proponent to take issue from jury.* On motion of the proponent to take the issue of undue influence from the jury in a will contest case only the evidence favorable to the contestant may be considered and all explanatory evidence in the proponent's favor must be excluded, and if there is any evidence of undue influence the motion of the proponent must be denied.

14. SAME—*when refusal to take issue from the jury constitutes prejudicial error.* In a will contest, refusal to take from the jury the issue of mental incapacity, where there is no evidence to support it, constitutes prejudicial error even though there is evidence to support the issue of undue influence, which is also charged, where the evidence on the latter issue is inconclusive while the evidence on the issue improperly submitted is of a character to appeal to the prejudice, passion or sympathy of the jury. (*Holland* v. *People's Bank,* 303 Ill. 381, distinguished.)

15. SAME—*when jury should not be instructed that direct evidence of undue influence is not required.* In a will contest case an instruction that "direct evidence of undue influence in procuring the execution of a will is not required to prove the existence of such undue influence," concluding by directing a verdict against the will, should not be given, where the entire case against the will rests upon the legal presumption arising from the fiduciary relation between the testatrix and the beneficiary who drew the will, as such instruction tends to make the case against the will conclusive without reference to any circumstances tending to rebut the legal presumption of undue influence. (*Dowie* v. *Sutton,* 227 Ill. 183, distinguished.)

16. SAME—*witnesses should not be asked whether fraud, duress or undue influence was used.* In a will contest case, where the testimony of the subscribing witnesses in the probate proceeding is admitted and read in evidence, objection to the reading of the question, "Was there any fraud, duress or undue influence used to get her to sign the instrument?" and the answer of each witness in the negative, is properly sustained by the court.

17. SAME—*what question should not be asked by proponent on re-direct examination.* In a will contest case, where a witness for the proponent has testified as to the testatrix's declaration of intention in the disposition of her property and on cross-examination the witness denies having made certain contradictory answers to questions asked her in the proceeding for probate, the proponent, on re-direct examination, should not question the witness as to what her answers were to other questions in the probate proceeding.

APPEAL from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding.

THEODORE A. KOLB, for appellants.

GRANVILLE W. BROWNING, guardian *ad litem*, (ARTHUR B. SCHAFFNER, and ALBERT G. DUNCAN, of counsel,) for appellee.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

After the affirmance in the case of *Wunderlich* v. *Buerger,* 287 Ill. 440, of the order of the circuit court of Cook county admitting to probate the will of Mrs. Henriette Boerner, her nephew, Hans Buerger, who opposed the probate of the will, filed a bill to contest it in the circuit court, alleging that at the time of executing the instrument she was not of sound mind and memory but her mind and memory were so impaired as to render her wholly incapable of making any distribution of her estate; that she executed the instrument without knowing its contents and not of her own free will but under the direction and the undue and improper influence of Theodore H. Wunderlich, who was, and for many years had been, her confidential attorney and legal representative, upon whose advice and counsel she relied and who prepared the will, by which he was made the sole residuary devisee and legatee and was named executor of the will without bond; that Fred Kaempfer was at the time the will was prepared and executed, and had been for several years, her business adviser, upon whose advice and counsel she relied in all her business dealings; that he sustained a fiduciary relation to her and by the use of falsehood and misrepresentation exercised an improper restraint and undue influence upon her and induced her to execute the supposed will. The heirs of the testatrix other than the complainant were made defendants and suffered default. Wunderlich, individually and as executor, Kaempfer, and

the legatees named in the will, were made defendants, and the two first named, together with others of the legatees, filed a demurrer to one paragraph of the bill which contained no allegations of material or issuable facts but merely statements of evidence, and to so much of the bill as charged undue influence filed a plea that all such questions had been determined in the previous proceedings for the probate of the will and that the complainant was bound by such determination. The rest of the bill was answered and the allegations of mental incapacity were denied. Upon argument the demurrer and plea were overruled. One of the defendants who is an appellant here stood by the demurrer and plea and declined to answer further, but the other defendants who had answered obtained leave and filed an amended answer. Thereupon the court ordered the issue of fact whether or not the writing in question was the last will and testament of Henriette P. E. Boerner, deceased, to be submitted to a jury. The trial resulted in a finding that the writing was not the last will and testament of Mrs. Boerner and a decree was entered setting aside the probate of the will, from which the executor, Wunderlich, Kaempfer and others of the defendants appealed.

It is contended that the court erred in overruling the plea of former adjudication as to the issue of undue influence. It is argued that the charges of undue influence made in the bill were legally cognizable in the proceeding for the probate of the will, and that they were actually tried and determined adversely to the complainant in that proceeding; that they were material questions, necessarily determined, and the adjudication of them was final and conclusive of the question whenever it arose in a subsequent suit between the same parties.

The general truth of the proposition that where a fact necessarily involved in the litigation has been decided in a suit and again becomes a matter in issue between the same

parties in a subsequent suit the former judgment is conclusive as to such matter is well established. (*Merrifield* v. *Canal Comrs.* 212 Ill. 456; *Wright* v. *Griffey,* 147 id. 496; *Hanna* v. *Read,* 102 id. 596.) The probate of a will is, however, a special statutory proceeding, in which the character and quantity of proof required has been carefully prescribed by statute, which has also declared the effect of the order and judgment of the court. The judgment rendered is merely that the will be admitted to record, and its effect is that the will shall be good and available in law for the granting, conveying and assuring of property, real and personal, thereby given, granted and bequeathed. This judgment, however, is not final but is subject to be set aside by a proceeding in chancery begun within a limited time after probate, which in the early history of the State was five years,—a period subsequently reduced successively to three years, two years, and in 1903 to one year. Within these respective periods the statute has always authorized any person interested to contest the validity of the will by a bill in chancery, and provided that if he did so, an issue should be made up and tried by a jury whether the writing was the will of the testator or not, but if no such person should appear within the time limited the probate should be forever binding and conclusive upon all concerned. The kind and quantity of evidence, the character of the witnesses and their number, the facts to be proved on the application for probate, and the effect of the judgment, were all specifically stated in section 2 of the act in regard to wills, which has remained substantially unchanged since 1829. Under that section it was held that in a proceeding for the probate of a will it was not competent for either party, in the probate court or on appeal to the circuit court, to introduce any evidence in relation to the execution of the will or the sanity of the testator except that of the subscribing witnesses, the statute having expressly provided that the testimony of two of the subscribing witnesses on these points should be

sufficient proof of the execution of the will to admit it to record. (*Walker* v. *Walker,* 2 Scam. 291; *Claussenius* v. *Claussenius,* 179 Ill. 545; *O'Brien* v. *Bonfield,* 213 id. 428.) Before 1897 the proceeding to probate a will was entirely *ex parte,* unless someone interested in the estate should voluntarily appear to make such objection as might be taken cognizance of. (*In re Will of Ingalls,* 148 Ill. 287.) Such objection was limited to the matters mentioned in the proviso of section 2, and included only fraud, compulsion and other improper conduct which in the opinion of the county court shall be deemed sufficient to invalidate or destroy the will, and other evidence than the testimony of the attesting witnesses was admissible to prove these. (*Walker* v. *Walker, supra; Duncan* v. *Duncan,* 23 Ill. 364; *Andrews* v. *Black,* 43 id. 256; *Stuke* v. *Glaser,* 223 id. 316.) The effect of this condition of the law limiting the evidence as to the execution of the will and the sanity of the testator to the testimony of the attesting witnesses was, that the rights of persons interested under a will were subject to be lost through the carelessness, loss of memory or dishonesty of the attesting witnesses, though the necessary facts to admit the will to probate could be clearly established by other witnesses. Accordingly the legislature enacted a provision (which as later amended is now section 13 of the act in regard to wills) that on appeal to the circuit court from an order refusing probate of a will the party seeking probate may support the will, on the hearing in the circuit court, by any evidence competent to establish a will in chancery, and if the will shall be admitted to probate on such appeal it shall be liable, however, to be subsequently contested, as provided in the case of wills admitted to probate in the first instance. (Laws of 1845, p. 596.) The right to supplement the evidence of the attesting witnesses was limited to the proponents of the will, but the right of those opposing probate as to the introduction of evidence was not increased, doubtless because the proponents were otherwise without remedy

while those opposing probate had still their remedy, under the statute, by contest in chancery. (*Heirs of Critz* v. *Pierce,* 106 Ill. 167.) So the law remained for many years, until in 1897 the legislature enacted a law requiring the heirs-at-law, legatees and devisees of the testator to be notified of the application for the probate of a will, since which time the proceeding for probate has been regarded as in the nature of a proceeding *inter partes* and not *ex parte.* (*Claussenius* v. *Claussenius, supra; Hitchcock* v. *Green,* 235 Ill. 298; *Schofield* v. *Thomas,* 231 id. 114.) In 1909 section 13 was amended so as to permit the proponents, on appeal from an order allowing as well as from one denying probate, to introduce evidence competent to establish a will in chancery but not enlarging the rights of those opposing probate. (Laws of 1909, p. 472.) The amendments to section 13 increased the right of the proponent of the will only in the introduction of evidence, so that on appeal to the circuit court from an order of the probate or county court, whether allowing or denying probate of a will, the proponent may support the will by any evidence competent to establish a will in chancery, but the right of contestants is not increased. They are still limited, as to evidence of the execution of the will and the testamentary capacity of the testator, to the subscribing witnesses, though they have the right to show fraud, compulsion or other improper conduct by the testimony of other witnesses. The statute has not been modified in this respect since it was adopted, in 1829. The contestants are limited in their proof to fraud, compulsion or other improper conduct sufficient to invalidate or destroy the will. A construction was given to these words in *Stuke* v. *Glaser, supra,* in which it was held that the fraud permitted to be proved to invalidate a will in a proceeding to admit it to probate relates to such conduct as a trick or device by which a person may be induced to sign a paper under the impression that it is something else, or to the alteration of a will after it is signed, or to the

substitution of another paper for part of the will after it has been signed, and matters of like character. It must also be held that "compulsion" refers to actual constraint or pressure, physical or otherwise, amounting to duress, or threats to compel the execution of the instrument, and that the general words "other improper conduct," following the specific words "fraud" and "compulsion," refer to other acts of a kind similar to those specifically mentioned. In *Oliver* v. *Oliver*, 313 Ill. 612, it is held that upon an application for probate of a will the only testimony admissible as to the execution of the will and the capacity of the testator is that of the attesting witnesses, and that the proof of fraud, compulsion or other improper conduct which may be shown by the contestants is limited to facts of the character stated in the case of *Stuke* v. *Glaser, supra.*

In *Duncan* v. *Duncan, supra,* it is said that "it is urged, and we think not without reason, that the plaintiffs in error should have been permitted to rebut the evidence of its execution by other proofs. The Statute of Wills, we think, does not prevent those having an interest in the estate to be affected by the will, from contesting its validity and due execution in the probate court." The opinion ends with the conclusion, "the plaintiffs in error, then, had the right to introduce evidence to invalidate the will in this case, and in doing so, we can perceive no reason why they might not examine the witnesses who had attested the will, as well as others." It does not appear what was the character of the evidence which it is held the plaintiffs in error had the right to introduce, but the court apparently assumed that the contestants might introduce evidence contradicting the attesting witnesses as to the execution of the will on the application for probate. Whether this is so or not, such conclusion seems contrary to the language of section 2, and the later decisions have restricted the admissibility of evidence of fraud, compulsion and improper conduct to cases

of the kind mentioned in *Stuke* v. *Glaser, supra,* and *Oliver* v. *Oliver, supra.*

In *Craig* v. *Trotter,* 252 Ill. 228, it is held competent for the contestants to contradict the testimony of the attesting witnesses that the testator signed the will in their presence, by the testimony of witnesses tending to show that the attesting witnesses were not in the testator's room at the time they claim the will was executed, and that the testator's physical condition was such that he could not have signed his name to the paper, as the witnesses testified he did, because his hands were so swollen that he could not hold a pen or pencil. This decision is at variance with the later cases last cited, and so far as it holds that testimony to contradict the testimony of the attesting witnesses to the execution of the will is competent on an application for probate of the will it is overruled.

From this history of the legislation on the subject of the probate of wills and a review of the decisions cited, the limited and inconclusive character of an order admitting a will to probate is apparent. The whole question of the execution, probate and contest of wills, as well as the devolution of property by will, is statutory. The legislature has provided a prompt and summary proceeding for the probate of wills, requiring the immediate production and early probate of the wills of deceased persons. No issue is required to be made between those who assert and those who deny the validity of the will, and the purpose of the proceeding, as has been stated in many cases, is merely to make a *prima facie* case of the execution of the will and the capacity of the testator, so that the estate may be cared for and the administration proceed, reserving to any person interested the right to contest the validity of the will at any time within a year of its probate, (*O'Brien* v. *Bonfield, supra; Claussenius* v. *Claussenius, supra; Moody* v. *Found,* 208 Ill. 78;) and until the expiration of that time the probate is not conclusive but is expressly declared liable to be contested

and every fact necessary to establish a will in chancery is open to inquiry. In case of such contest the probate will not have the slightest effect, but the burden of proof will be on the proponents to establish the existence and validity of the will, the trial will be *de novo,* and the issue will be submitted to the jury as a new and original question, without regard to the fact that the instrument has been admitted to probate. *Pratt* v. *Hawley,* 297 Ill. 244; *Rigg* v. *Wilton,* 13 id. 15.

In the opinion in 287 Ill. 440 is a statement of the case sufficiently full for the purposes of this case, also. The evidence is practically the same and the case is not substantially affected by the testimony of the few additional witnesses who were examined. The questions presented by the pleadings upon the answer to which the issue of will or no will was to be determined were the mental capacity of the testatrix and the exercise of undue influence by Wunderlich and Kaempfer. The proponents, at the close of the evidence, requested an instruction directing the jury to find for the proponents on the issue of mental capacity and another to find for the proponents on the issue of undue influence, but the court refused both instructions. The instruction to find the issue as to mental capacity for the proponents should have been given. There was no evidence of mental incapacity. It does appear that Mrs. Boerner was a simple-minded, uneducated old German woman without business knowledge or experience, with slight knowledge of the English language, whose husband had during his lifetime managed and directed the business and financial affairs of the family. After his death the management of her property and the care of her finances were confided to Kaempfer, in whom she placed implicit confidence. Being ignorant of business and wholly inexperienced she relied upon him absolutely. To trust one's affairs to a confidential agent, to confide in him completely and to rely unquestioningly on his judgment, are not evidence of a lack of sound and dispos-

ing mind and memory. If the testatrix at the time of executing the instrument in question had sufficient mind and memory to understand the business she was then engaged in, was able to recall the persons who were the natural objects of her bounty, the property she owned and the disposition she wanted to make of it, she was possessed of testamentary capacity. (*Austin* v. *Austin,* 260 Ill. 299.) Her letters show that she had in mind the making of her will and the disposition of her property, also her relations. She did not want them to share in her estate, except those mentioned in her will. The reason is immaterial,—even if it were a baseless prejudice,—provided it did not amount to an insane delusion. One bequest was to "my sister, Louise Buerger, Leipzig, Germany, the sum of $500." Mrs. Boerner's sister, Louise, had died in 1881, as Mrs. Boerner knew, leaving a daughter, Louise, and it is argued from these facts that Mrs. Boerner did not know what was in the will. "My sister, Louise Buerger," was evidently a mistake and referred to the testatrix's niece, Louise, the daughter of her sister of the same name. There were twenty-five of these bequests, made severally to persons who were, respectively, named, for amounts from $100 to $1000. It appears clearly that Mrs. Boerner knew who her relatives were, and the accidental failure to discover the error in this single item in the list is no evidence either that she had not the mental capacity to know who her relatives were and to understand the contents of the will, or that the will was not read over to her as written in English and translated into German, as the attesting witness Henry G. Conrad testified it was, and as the attesting witness Timothy D. Hurley testified she told him it was. The testatrix undoubtedly had a feeling of great respect for Kaempfer and Wunderlich and of deference to their wisdom and judgment, but her blind confidence in them, even in the absence of detailed knowledge of the different items of her property or the total amount of it, did not show that she was mentally incapable

of forming a rational plan for the disposition of her property among those whom she wished to have it, and the terms of the will itself show no evidence of any lack of the mental capacity required for that purpose.

The instruction to find the issue as to undue influence for the proponents was properly refused. As to Kaempfer there was no evidence which justified the submission of that question to the jury. The mere existence of a fiduciary relation does not raise a presumption of undue influence in the case of a will made by a testator in favor of the fiduciary. (*Wunderlich* v. *Buerger, supra.*) In such case the actual exercise of undue influence operating at the time of the execution of the will must be shown. There is no such evidence. Doubtless the feeling of the testatrix for Kaempfer was such that he might have influenced her in the making of her will, but there is no evidence that he made any effort to do so or any suggestion as to any provision of her will. If his influence, alone, were to be considered the instruction should have been given, but Wunderlich also was included in its terms, and with him another element enters into the case. He prepared the will and received a substantial benefit from it, and we held on the appeal from the probate that these facts, unexplained, because of the legal presumption, sustained the charge that the will was procured by his undue influence. True, we also held that the circuit court was justified in holding that the presumption of undue influence had been overcome, but that was upon a consideration of all the evidence in the case. The motion we are now reviewing is based only on the evidence favorable to the contestant. All the explanatory evidence in the proponents' favor must be excluded, and we are bound, when that is done, to adhere to our judgment in the previous case that there was evidence which, without the proponents' explanatory evidence, justified the submission of the cause to the jury. Since there was this evidence of undue influence

the instruction for the proponents on this issue was properly refused.

It is argued that where both mental incompetency and undue influence are charged, a decree will not be reversed for an erroneous refusal to take from the jury one of the issues which there is no evidence to sustain if there is evidence to support the other charge. (*Holland* v. *People's Bank,* 303 Ill. 381.) This rule has its foundation in the general rule that a judgment will not be reversed for error which could not have misled the jury and could not reasonably have affected the verdict. Where the evidence to support the issue properly submitted to the jury is in itself of an inconclusive character and the evidence on the other issue is of a character to appeal to the prejudice, passion or sympathy of the jury, it is error to submit the latter issue, and the evidence in support of it, to the jury. The jury were fully instructed at the request of the appellee, with some repetition, on the subject of undue influence both with reference to Wunderlich and Kaempfer, though there was no evidence as to the latter properly entitled to consideration. They were also instructed that where undue influence or want of testamentary capacity is charged, as they are in this case, all of the surrounding facts, including the bequests themselves, their propriety or impropriety, their reasonableness or unreasonableness, in view of the situation, relations and circumstances of the testatrix, may be considered in determining whether the testatrix was at the time of the execution of the alleged will of sound mind and memory or whether the alleged will was procured by undue influence. No other instruction was given to the jury defining testamentary capacity or informing them of any rules by which its existence could be determined or the jury governed in considering this issue. They were therefore left to base a verdict against the will either upon the ground of undue influence or want of testamentary capacity, with no rule to guide as to what constituted testamentary capac-

ity. Not only so, but the court refused to give, among other instructions asked by the appellants, the following:

2. "The court instructs the jury that while it is true that a person may be so diseased mentally as not to be of sound mind, yet he might possess what the law terms a 'disposing mind,' that is the mental capacity to know and understand what disposition he may wish to make of his property and upon whom he will bestow his bounty. It is a rule of law, that a person who is capable of transacting ordinary business is also capable of making a valid will. You are instructed that the mental illness or disturbance or mental decline which incapacitates a person from making a will must be of that character which renders him incapable of understanding the effect and consequences of his acts. A test you should recognize is, the party must be capable of acting rationally in the ordinary affairs of life so that he may comprehend what disposition he may wish to make of his property and be able to select the subjects of his bounty. Nothing more is required."

5. "The court instructs the jury that while capacity to transact the ordinary business of life also shows testamentary capacity, the real question submitted to you is not whether Mrs. Boerner had sufficient mental capacity to comprehend and transact ordinary business, but whether she did at the time of making the instrument purporting to be her will, have such mind and memory as enabled her to understand the particular business in which she was then engaged. If she did, and if she was able to remember who were the natural objects of her bounty, and to recall to mind her property, and make disposition of it understandingly, according to some purpose or plan formed in her mind, then she was possessed of testamentary capacity and with such capacity uninfluenced improperly by others, she may make valid testamentary disposition of her estate."

10. "The court instructs the jury that neither age, sickness, nor debility of body will affect capacity to make a will

if sufficient intelligence remains. It is enough if Mrs. Boerner possessed sufficient mental capacity to knowingly and understandingly dispose of her property by will, and if you find that she did distribute her estate to those to whom she desired it to go."

These instructions announced correct rules of law applicable to the case by which the jury should be governed if the issue of testamentary capacity was to be determined by them, yet they were refused and the jury were sent out with no guide but their own will or judgment to pass upon this issue. Moreover, on the issue of undue influence the following instruction was given at the request of appellee:

4. "You are instructed that direct evidence of undue influence in procuring the execution of a will is not required to prove the existence of such undue influence. Proof of undue influence may be made by evidence of facts from which the inference of the existence of such undue influence may naturally and reasonably be drawn and if you believe, from the evidence, that any fact or facts are proved from which the inference may fairly and reasonably be drawn that the alleged will of Henriette P. E. Boerner was procured by undue influence operating upon her at the time of the execution of the said alleged will, then and in that case it is your duty to find said alleged will is not the will of Henriette P. E. Boerner."

This instruction was given in *Dowie v. Sutton,* 227 Ill. 183, and was approved in that case. The objection made to it was the use of the expression "direct evidence," and what is said in the opinion is a sufficient answer to the objection. In that case the charge was the actual exertion of undue influence exercised on the testator in the execution of the will as well as the existence of a confidential relation, and whatever may be said of the instruction in such a case it was not proper to be given in this case, where there is no evidence of acts of undue influence but the whole case rests upon the legal presumption arising from the fidu-

ciary relation between the testatrix and Wunderlich. In several instructions the jury were told that the relation of attorney and client existed between the testatrix and Wunderlich; that Wunderlich received a substantial benefit from the will which he prepared, and therefore the presumption of law arose that the will was procured by his undue influence. These instructions told the jury that facts were proved showing that the will was procured by the undue influence of Wunderlich, and the fourth instruction directed a verdict for the appellee, saying, "then and in that case it is your duty to find said alleged will is not the will of Henriette P. E. Boerner." This declared the existence of a fiduciary relation, and the preparation by the fiduciary of a will conferring a special benefit on him, conclusive against the will, without reference to any circumstances tending to rebut the legal presumption of undue influence arising from these facts.

The appellants offered in evidence the certificate of the oath of the subscribing witnesses from the files of the probate court and it was admitted in evidence, but during the reading objection was made to the following question and answer in the testimony of each of the witnesses: "Was. there any fraud, duress or undue influence used to get her to sign the instrument?" "No, sir." The court sustained the objection and it is argued that this was error. It is held otherwise in *Adams* v. *First M. E. Church,* 251 Ill. 268.

A witness called by the proponents testified that the testatrix had told her that she wished to leave all of her property to Kaempfer and wished to turn some of it over to him in her lifetime and he would not accept it even if she willed it to him, but that later she expressed pleasure because Kaempfer had finally consented to take what she wished to will to him. On cross-examination the contestant asked the witness if she had not made certain answers to questions asked her on the previous trial in the circuit court, and she denied having made the answers. On re-direct ex-

317—27

amination the proponents asked the witness whether on the same trial she had not made certain answers to other questions asked her, and the court sustained an objection. It was properly sustained. She had denied making the supposed contradictory answers, there was no proof that she had made them, and there was no basis for introducing the answers which the appellants' question sought to elicit.

The appellants introduced two exhibits, Nos. 205 and 207. Neither of these enclosures was in the handwriting of the testatrix and there was no proof in whose handwriting they were. There was no identification of the documents in connection with the communications with which they were offered, and the objection to them was properly sustained.

For the errors in the instructions which have been indicated the decree is reversed and the cause remanded.

*Reversed and remanded.*