*In re* ESTATE OF PETER J. CORNELIUS, Deceased (Eldred J. Cornelius, Ex'r of the Estate of Peter J. Cornelius, Petitioner-Appellee, *v.* Terry Lee Mingee, Respondent-Appellant).

Fourth District   No. 4—83—0813

Opinion filed June 28, 1984.

James L. Dobrovolny, of Dobrovolny & Souk, of Urbana, for appellant.

Richard Kirby, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellee.

PRESIDING JUSTICE MILLS delivered the opinion of the court:

Intestate estate closed.

$400,000 in farmland.

Will found under an old rug.

Will admitted.

We affirm.

The facts are as follows. Cornelius died September 15, 1980. No will was immediately found so his estate was administered intestate. After payment of the expenses of administration, there remained to be

distributed an estate valued at over $400,000, consisting primarily of farmland. The estate was closed November 23, 1981.

In March 1983, Roy P. Johnson found an envelope under an old rug in the living room of Cornelius' house. He thought that this contained the last will and testament of Cornelius. On March 22, 1983, the document was filed with the clerk of the circuit court of Champaign County. On April 20, 1983, appellees here filed a petition to vacate the court's order of November 23, 1981, which closed decedent's estate. The relief was requested pursuant to section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1401).

Upon the filing of this petition, a guardian *ad litem* was appointed to represent the interest of a minor, Terry L. Mingee, who was an heir of the estate. The guardian *ad litem* opposed the petition to vacate. A hearing was had, at which time Roy Johnson described the events leading to his discovery of the document purported to be Cornelius' will. Following the taking of evidence, the trial court ruled that its original order closing decedent's estate should be vacated and granted petitioner leave to file a petition for probate of the will and for letters testamentary in the estate of Peter Cornelius.

A hearing was held on October 6, at which time the petitioner put on proof pertaining to the execution of the will of Cornelius. Betty Smith, an employee of the probate division of the local circuit clerk's office, testified that she was familiar with the handwriting of one of the witnesses and identified his signature as appearing on page 2 of the will. She also testified that to her knowledge the witness had been dead for more than 10 years.

Ann Bell testified that her signature appeared on page 2 of the will and that she placed it there at the request of Cornelius. She also testified that she observed Cornelius sign the will. She stated that two other witnesses were present when she signed the will. She indicated that she had personally observed the two witnesses sign the will and identified their signatures thereon.

James Myers, president of the First National Bank of Ogden, Illinois, testified that the signature on page 1 of the will appeared to be that of the testator. He also indicated that he had refreshed his recollection as to the testator's signature from signature cards at his bank before coming to court to testify.

Eldred Cornelius testified that he was a son of decedent, that he was familiar with the signature of his father, and that his father's signature appeared on the first page of the will.

On November 2, 1983, a written order was entered, admitting the last will and testament of decedent, Peter J. Cornelius, to probate. Let-

ters testamentary were also ordered issued.

Appellant has raised numerous issues which—it is argued—require us to reverse the decision of the trial court. In view of our disposition of this case, only two issues bear discussion.

The first issue is whether section 24—9 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 24—9) spells out the only circumstances under which a closed estate may be reopened. It does not. The second issue is whether the proof offered by appellees was sufficient to allow the trial court to admit decedent's will to probate. It was.

## I. EXCLUSIVITY OF SECTION 24—9

█ █ Appellant's first argument is that the legislature specified the only circumstances under which an estate may be reopened and that those circumstances are not present here. Section 24—9 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 24—9) provides in pertinent part that a decedent's estate which has been closed and whose representative has been discharged may be reopened to permit the administration of newly discovered assets or of an unsettled portion of the estate of any interested person. From the language of this portion of the statute appellant goes on to argue that since there are no newly discovered assets here—nor is there an unsettled portion of an estate—this estate may not be reopened upon the discovery of an unknown will.

Appellant's argument fails for two reasons. First, section 24—9 is found in that portion of the Probate Act of 1975 dealing with accounts. From this we may infer that it was meant to apply to situations involving changes in the corpus of an estate, not the way in which that corpus is divided. Second, Illinois courts have long recognized that a newly discovered will provides adequate grounds for vacating a prior distribution and taking up anew the matter of the estate. (See *Oliver v. Oliver* (1924), 313 Ill. 612, 145 N.E. 123.) Further, courts constructing section 24—9 have closely limited its application to instances of newly discovered assets rather than limiting the application of the Probate Act of 1975 *in toto* by operation of one section of the act. We consider that such a view is more in keeping with the legislative scheme as well as the trend in Illinois and the country generally which seeks to simplify and streamline probate matters. Such a view avoids the formalistic ties with which this area of the law has so long been bound.

To conclude: Section 24—9 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 24—9) does not establish the sole grounds under which a closed estate may be opened. Further, it did not preclude the trial court here from vacating its prior order which was based

on its finding that Peter Cornelius had died intestate.

## II. BURDEN OF PROOF

■■ ■ Appellant's second claim of error is that appellee neither established the competency of the attesting witnesses nor the fact that the witnesses and the testator signed the will in the presence of each other. Appellant's argument centers mostly on the perceived inadequacies of the testimony of the lone surviving witness, Ann Bell. Appellant would have us vivisect the testimony, then put the pieces back together and find that the witness failed to invoke the magic incantation pertaining to her viewing the attestation in the presence of the testator and the other subscribing witnesses. We decline.

Under our view of the scenario of this case, Bell did not have to testify at all!

The testimony about which appellant complains was had at a hearing, the purpose of which was to "prove" the will. Under section 6—4(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 6—4(a)), the proponents of wills must prove several factors. Under section 6—4(b) (Ill. Rev. Stat. 1983, ch. 110½, par. 6—4(b)), the factors may be proved by the presence of an adequate attestation clause attached or made part of the will. The will, which was part of the record before this court, bears an attestation clause which states that the witnesses, believing the testator to be of sound mind and memory, signed the last will and testament of the testator in the presence of him and in the presence of each other. This is enough to satisfy the proponent's burden of proof under section 6—4.

Appellant's arguments all seem to go to matters which might be pertinent had the hearing been convened pursuant to section 6—21 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 6—21). This section specifically states that upon the petition of an interested party, the proponents of a will must, *by testimony*, prove the matters of section 6—4. Section 6—21 specifically states that the proof cannot be by an attestation clause alone when there has been a petition for formal proof. But as we have previously noted, section 6—21 requires an interested party without notice to petition the court for formal proof.

In sum, a proper attestation clause is self-proving as long as all interested parties received adequate notice.

Affirmed.

GREEN and MILLER, JJ., concur.